# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

**Anthony L. Viola,**                    **Case No. 1:20cv765**

                           **Plaintiff,**

        **-vs-**

                           **JUDGE PAMELA A. BARKER**

**Ohio Attorney General,**
**et al.**                               **MEMORANDUM    OPINION    AND**
                           **Defendants.**    **ORDER**

Currently pending are the following motions filed by *pro se* Plaintiff Anthony L. Viola ("Viola"): (1) Motion for Appointment of Counsel (Doc. No. 23); (2) Motion to Take Judicial Notice of Recent News Articles (Doc. No. 32); and (3) Motion to Refer Mark Bennett and Dan Kasaris for Criminal Prosecution (Doc. No. 40).  Also pending are the following motions filed by the various Defendants in this action: (1) Motion of Defendants Justin Herdman, Mark Bennett, Steven Dettelbach, John Siegel, Laura Irwin, and John Moustakas ("Federal Defendants") to Dismiss and to Declare Vexatious (Doc. No. 30); (2) Motion of Defendants Dave Yost, Heather Buchanan, Micah Ault, and Daniel Kasaris ("State Defendants") to Dismiss (Doc. No. 34); (3) Defendant Michael O'Malley's Motion to Dismiss (Doc. No. 31); (4) Defendant Marcus Sidoti's Motion to Dismiss (Doc. No. 52); (5) Defendant Jaye Schlachet's Motion to Dismiss (Doc. No. 22); and (6) Defendant Daniel Kasaris's Motion to Impose Pre-Filing Restrictions upon Plaintiff (Doc. No. 45).

For the following reasons, Plaintiff's Motions for Appointment of Counsel (Doc. No. 23), to take Judicial Notice (Doc. No. 32), and to Refer for Criminal Prosecution (Doc. No. 40) are DENIED. The Federal Defendants' Motion to Dismiss and to Declare Vexatious (Doc. No. 30) is GRANTED IN PART and DENIED IN PART, as set forth herein.  The State Defendants' Motion to Dismiss

(Doc. No. 34) is GRANTED.  The Motions to Dismiss filed respectively by Defendants O'Malley, Sidoti, and Schlachet (Doc. Nos. 31, 52, 22) are GRANTED.  And, finally, Defendant Kasaris's Motion to Impose Pre-Filing Restrictions (Doc. No. 45) is DENIED.

## I.    Background

In April 2011, Anthony Viola was tried and convicted in the United States District Court for the Northern District of Ohio on thirty-three (33) counts of wire fraud and two (2) counts of conspiracy arising from a mortgage fraud scheme.  *See United States v. Viola*, Case No. 1:08cr506 (N.D. Ohio) (Nugent, J.)  Viola was subsequently sentenced to 150 months for each of the wire fraud counts and 60 months for each of the conspiracy counts, with all terms of imprisonment to run concurrently.  *Id.*  Viola alleges (and the federal docket indicates) that Defendants Mark Bennett, John Siegel, and Michael Ault[1] were the Assistant United States Attorneys that prosecuted Viola's federal case.  Viola's federal conviction and sentence were upheld on direct appeal to the Sixth Circuit Court of Appeals.  *See United States v. Viola*, 2013 U.S. App. Lexis 26454 at * 2 (6th Cir. Nov. 6, 2013). [2]

Meanwhile, in 2012, Viola was tried and acquitted of similar charges under state law in the Cuyahoga County Court of Common Pleas.   *See State v. Viola*, Case Nos. CR-10-536877 and CR-10-543886 (Cuy. Cty. Ct. Cmn. Pl.)  Defendant Daniel Kasaris (who was then a Cuyahoga County Prosecutor) prosecuted Viola's state case.

---

[1] Defendant Ault is now employed by the State of Ohio as an Assistant Attorney General.

[2] In addition, over the years, Viola filed numerous challenges to his federal conviction and sentence, all of which were denied.  *See, e.g., United States v. Viola*, 2015 WL 7259783 (N.D. Ohio Nov. 17, 2015) (denying Viola's Motion to Vacate under 28 U.S.C. § 2255 and attaching a list of all the various post-judgment motions and appeals filed by Viola); *Viola v. United States*, Case No. 16-3023 (6th Cir. Nov. 23, 2016) (denying Viola's application for certificate of appealability regarding denial of § 2255 motion); *United States v. Viola*, Case No. 08cr506 (N.D. Ohio) (Doc. No. 541) (denying multiple post-judgment motions).

On March 30, 2020, Viola, proceeding *pro se*, filed a Complaint in the United States District Court for the Southern District of Ohio against numerous defendants, in which he asserted that various instances of governmental misconduct occurred during both his state and federal trials.  (Doc. No. 1.) On April 8, 2020, the Southern District of Ohio transferred the instant action to this Court.  (Doc. No. 3.)

On July 29, 2020, Viola filed a First Amended Complaint, naming the following fourteen (14) Defendants: (1) United States Attorney for the Northern District of Ohio Justin Herdman; Assistant United States Attorneys ("AUSAs") Mark Bennett, John Moustakas and Laura Irwin; former United States Attorney Steven Dettelbach; and former AUSA John Siegel (the "Federal Defendants"); (2) Ohio Attorney General Dave Yost; Assistant Attorney Generals Heather Buchanan, Micah Ault, and Daniel Kasaris; and former Assistant Attorney General Tiffany Carwile (the "State Defendants"); (3) Cuyahoga County Prosecutor Michael C. O'Malley; and (4) attorneys Marcus Sidoti and Jaye Schlachet.[3]  (Doc. No. 25.)

In the Amended Complaint, Viola alleges that he was "simultaneously prosecuted in both federal and state court, on identical charges, by the same prosecution team, through a multi-jurisdictional Mortgage Fraud Task Force."  (Doc. No. 25 at p. 1.)  He asserts that, when evidence that was improperly withheld during the federal trial was later introduced at his state trial, "actual innocence was established . . . on the exact same charges."  (*Id*. at p. 2.)  Relying on numerous exhibits attached to the Amended Complaint, Viola asserts six categories of alleged government misconduct relating to his federal and state trials.  (*Id*. at pp. 2-6.)

---

[3] On the same date that he filed his First Amended Complaint, Viola also filed a Motion for Appointment of Counsel. (Doc. No. 23.)

3

First, Viola alleges that Defendants Bennett and Kasaris "possessed proof of [Viola's] innocence yet failed to produce that evidence before either criminal trial."  (*Id.* at p. 2.)  Specifically, Viola alleges that Bennett and Kasaris (1) "shifted" exculpatory evidence (including FBI interview summaries and bank documents) to the Mortgage Fraud Task Force location and then "plead ignorance" as to this evidence; and (2) falsely claimed that the Task Force lost certain computers. (*Id.*)

Second, Viola alleges that Defendants Bennett and Kasaris directed Mortgage Fraud Task Force Office Manager Dawn Pasela to pose as a graduate student studying criminal defense, offer to assist Viola's defense team, and then secretly record conversations with Viola so that "prosecutors could obtain confidential defense trial strategy information."  (*Id.* at p. 3.)  Viola claims that Ms. Pasela became concerned that Bennett and Kasaris were not producing exculpatory evidence to the defense.  (*Id.*)  She then provided Viola "with key evidence, assisted [Viola] with preparation for the [state] trial, prepared defense exhibits, and offered to testify as a witness about misconduct inside the Task Force."  (*Id.*)  Viola alleges that federal agents and Defendant Kasaris threatened Ms. Pasela with prosecution if she testified for Viola.  (*Id.*)  He states that Ms. Pasela "never appeared in court and was found dead in her apartment by her Father shortly after her scheduled testimony."  (*Id.*)

Third, Viola alleges that Defendants Kasaris, Bennett, Siegel, and Ault all knowingly used the perjured testimony of government witness Kathryn Clover.  (*Id.* at p. 4.)  Viola further alleges that Defendant Schlachet represented Ms. Clover, was aware that she had perjured herself, and asked Defendant Bennett to recall Clover to the stand to correct her false testimony.  (*Id.*)  Viola alleges that Bennett refused to do so and that Schlachet "accepted Bennett's decision and failed to report the

knowing use of perjured testimony to obtain a conviction to the Ohio Supreme Court Disciplinary Counsel." (*Id*.)

Fourth, Viola alleges that Defendant Kasaris was involved in an inappropriate romantic relationship with Ms. Clover and that numerous individuals (including Defendant Sidoti) were aware of this relationship but failed to report it. (*Id*. at pp. 4-5.) Viola asserts that the evidence he has amassed regarding this alleged relationship "underscore[s] the need for an immediate investigation by the proper authorities into these serious allegations, which may result in the dismissal of dozens of criminal cases in which Clover testified and/or the initiation of criminal charges against Bennett and Kasaris." (*Id.* at p. 5.)

Fifth, Viola alleges that, prior to his federal trial, "timely objections to conflicts of interest resulting from joint defense between all defendants who proceeded to trial and the simultaneous representation by those same attorneys of government witness Kathryn Clover and lender employees were filed." (*Id*.) Viola asserts that Defendant Bennett was aware that an actual conflict existed but repeatedly lied in multiple court filings by falsely claiming that conflicts of interest were waived. (*Id*.)

Sixth, and finally, Viola alleges that Defendant Kasaris "acted under color of law and abused an unconstitutional state statute to threaten to prosecute individuals posting comments on blogs related to [Viola's] case." (*Id*. at p. 6.) Specifically, Viola alleges that, when he continued to be incarcerated on federal charges despite his acquittal in state court, his friends and supporters set up a website called www.FreeTonyViola.com. (*Id*.) The mission of this website was to "shine a bright spotlight on the 'win at all costs' tactics, prosecutorial overreach, and misconduct the United States Department of Justice employs when prosecuting American citizens." (*Id.*) Among other things, the

5

website included allegations regarding Defendant Kasaris's alleged romantic relationship with Ms.

Clover.  (*Id.*)  Viola alleges that Kasaris threatened to prosecute the www.FreeTonyViola.com

webmaster, Robert Ryan, which resulted in Mr. Ryan quitting.  (*Id.*)  He further alleges that Kasaris

"sent threatening letters to the Plaintiff as well as other citizens . . . who posted comments on our

blog, threatening to prosecute these individuals pursuant to Ohio Revised Code § 2921.03(a)."  (*Id.*

at pp. 6-7.)  In support of this allegation, Viola attaches to the Amended Complaint a letter from

Kasaris to Viola dated September 2016.  (Doc. No. 25-29.)  This letter states as follows:

> I am writing you to inform you that Ohio Law provides that, "No person, knowingly
> using a materially false or fraudulent writing with malicious purpose, in bad faith, or
> in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a
> public servant in the discharge of the person's duty." Please see Ohio Revised Code
> 2921.03(a).  For approximately a year[,] you or others on your behalf have carried on
> a campaign publishing false or materially false writings in a reckless manner
> attempting to intimidate me in the performance of my  duties as a prosecutor and as a
> city councilman in the City of North Royalton by using absolutely false writings some
> of which have already been adjudicated to have been false, in a reckless manner. In
> addition you and/or others acting on your behalf and possibly with your consent have
> attempted to interfere [with] business relationships which I have and employment.
>
> Please cease the above describe[d] conduct and please remove or cause to be removed
> any reference to me, and my family, including my wife and daughters from the website
> known as www.freetonyviola.com, or any social media.  Please remove or cause to be
> removed the pictures of myself and my daughters from www.freetonyviola.com or
> any social media [you] have direct or indirect control over.  Failure to do so may result
> in the initiation of a complaint against you for violation of the above statute which is
> a felony of the third degree per occurrence, with the appropriate law enforcement
> agency.

(*Id.*)

In the Amended Complaint, Viola seeks a declaratory judgment that Ohio Rev. Code §

2921.03(A) is unconstitutional because it infringes upon and chills his First Amendment rights.  (Doc.

No. 25 at p. 7.)  In addition, Viola asks the Court to declare that "each defendant, in their professional

capacity, is required to report the credible allegations of misconduct described herein, either to the

6

Department of Justice's Inspector General or the Ohio Supreme Court Disciplinary Counsel, and further declare that all defendants named herein are required to follow the Code of Federal Regulations and Rules of Professional Conduct."  (*Id*.)

On August 10, 2020, the Federal Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. Pr. 12(b)(1), (5) and (6), and to Declare Viola a vexatious litigator and enjoin him from filing further civil actions without court approval.  (Doc. No. 30.)  Shortly thereafter, the State Defendants filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  (Doc. No. 34.)  Defendants O'Malley, Sidoti, and Schlachet filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as well. (Doc. Nos. 22, 31, 52.)  Viola filed a Consolidated Brief in Opposition on September 21, 2020.  (Doc. No. 37.)  The Federal Defendants, State Defendants, and Defendant O'Malley all filed Reply Briefs in support of their various Motions to Dismiss.  (Doc. Nos. 39, 47, 48.)

In addition, on August 17, 2020, Viola filed a "Motion to Take Judicial Notice of Recent News Articles detailing Prosecutorial Misconduct by Mark Bennett and Dan Kasaris."  (Doc. No. 32.)  The Federal Defendants and Defendant O'Malley filed Briefs in Opposition.  (Doc. Nos. 35, 36.)  Viola did not file a reply.

On September 30, 2020, Viola filed a Motion to Refer Mark Bennett and Dan Kasaris for Criminal Prosecution.  (Doc. No. 40.)  The Federal Defendants and Defendant Kasaris filed Briefs in Opposition, to which Viola replied.  (Doc. Nos. 45, 51, 53.)  In addition, Viola subsequently filed a pleading captioned "Additional Documents in Support of Motion for Criminal Referral."  (Doc. 55.)

Finally, on October 13, 2020, Defendant Kasaris filed a Motion to Impose Pre-Filing Restrictions on Plaintiff.  (Doc. No. 45.)  Viola did not file a response.

## II.    Motion for Appointment of Counsel (Doc. No. 23)

Viola requests appointment of counsel "so that the issues set forth in the amended complaint can be more properly presented to the Court and so that a proper factual investigation of misconduct by Prosecutors Dan Kasaris and Mark Bennett can be conducted." (Doc. No. 23 at p. 1.)  In support of his request, Viola states that he was recently released from prison and has limited financial resources.  (*Id.*)  He notes that other federal courts (including the United States Court of Appeals for the Third Circuit) have found him to be indigent and appointed counsel for him in related civil matters.  (*Id.*)  Finally, Viola argues that, given the nature of his allegations herein, "[t]he public's confidence in the fair administration of justice would be well served by appointment of counsel in this matter." (*Id.*)

Appointment of counsel in a civil case is not a constitutional right.  *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993).  Rather, the authority to appoint counsel in a civil case rests with the sound discretion of the District Court and is justified only in cases of "exceptional circumstances." *Id.*  In considering whether "exceptional circumstances" exist, "courts have examined 'the type of case and the abilities of the plaintiff to represent himself.'"  *Id*. at 606 (quoting *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987)).  Such an examination "involves a determination of the 'complexity of the factual and legal issues involved.'" *Id.* (quoting *Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir.1986)).

While the Court recognizes the difficulties facing *pro se* litigants, the Court is not persuaded that Viola's request for an attorney implicates the necessary "exceptional circumstances" that warrant appointment of counsel.  Upon careful review of the First Amended Complaint, the Court concludes that the factual and legal issues in this case are not particularly complex.  Moreover, Viola's various motions and briefs indicate that he is sufficiently able to articulate his factual and legal arguments

8

and to draft legal documents on his own.  Lastly, the fact that other courts may have appointed counsel

for Viola is neither persuasive nor determinative of whether "exceptional circumstances" warrant the

appointment of counsel in the instant action.  After considered and careful review, the Court finds

that they do not.

Accordingly, Viola's Motion for Appointment of Counsel (Doc. No. 23) is denied.

### III.     Motion to Take Judicial Notice (Doc. No. 32)

In his Motion to Take Judicial Notice, Viola argues that:

> Recent news articles describe—in detail—the Justice Department's illegal
> 'win at all costs' style of litigation and specifies misconduct throughout the
> Plaintiff's criminal cases by Defendants Mark Bennett and Dan Kasaris.
> The undersigned believes this Court should be made aware of the media
> coverage of prosecutorial misconduct—which is at the heart of this
> litigation—and has attached one example of recent coverage of the illegal
> actions of Bennett and Kasaris . . . .

(Doc. No. 32 at p. 1.)  Viola maintains that, pursuant to Fed. R. Evid. 201(b), a court may take judicial

notice of a fact not subject to reasonable dispute and that "it is well established that courts may 'take

judicial notice of matters of common knowledge . . . .'"  (*Id.*)  Attached as Exhibit A to Viola's

Motion is a printed copy of a column posted on www.townhall.com on August 4, 2020, entitled

"Corrupt DOJ Finally Caught For Going After Little Guys During Subprime Mortgage Crisis"

(hereinafter referred to as "Exhibit A").  (Doc. No. 32-1.)

Defendant O'Malley and the Federal Defendants oppose Viola's Motion.  (Doc. Nos. 35, 36.)

These Defendants argue that Viola does not seek judicial notice of the *existence* of the article attached

to Viola's Motion as Exhibit A, but actually "seeks to have the Court accept as fact his allegations of

misconduct, which are repeated in" Exhibit A.  (Doc. No. 36 at p. 2.)  Defendants argue that the Court

is prohibited from considering the substance of Exhibit A for the truth asserted therein.  (*Id.* at p. 3;

9

Doc. No. 35 at p. 4.) Defendants further argue that Viola generally fails to comply with Fed. R. Evid. 201(b) because Exhibit A contains facts that are in dispute, not generally known, and are sourced from an opinion column that cites liberally from a website maintained by Viola himself. (Doc. No. 35 at pp. 5-6; Doc. No. 36 at pp. 3-4.)

According to Fed. R. Evid. 201(b), courts may judicially notice a "fact that is not subject to reasonable dispute" because it is either "generally known" within the court's territorial jurisdiction, or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See also Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 579 (6th Cir. 2012) ("[O]nly facts that are 'not subject to reasonable dispute' may be judicially noticed"); *Johnson v. City of Kentwood*, 2020 WL 2610971 at *7, fn.2 (W.D. Mich. May 22, 2020) ("Judicially-noticed facts must be reasonably accurate and not open to dispute.") *See also Passa v. City of Columbus,* 123 Fed. Appx. 694, 697 (6th Cir. 2005)).

Additionally, judicial notice is limited. "[A] court may take notice of the documents and what they say, but it '[cannot] consider the statements contained in the document for the truth of the matter asserted.'" *Platt v. Bd. of Comm'rs on Grievs. & Discipline of Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018) (quoting *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014)). In other words, a court may take judicial notice of the document's existence but cannot take judicial notice of the document's substance. *Id. See also Davis v. City of Clarksville*, 492 Fed. Appx. 572, 578 (6th Cir. 2012).

Here, Viola has failed to satisfy the requirements of Fed. R. Evid. 201(b). Specifically, Viola has failed to demonstrate that Exhibit A (or any other unidentified "media coverage of prosecutorial misconduct" that he wishes the Court to take notice of) constitutes or includes "facts that are not

subject to reasonable dispute" for purposes of Rule 201(b). Rather, as discussed below, the alleged "facts" set forth in Exhibit A are strongly disputed, not generally known, and come from a dubious source.

Exhibit A's alleged facts about prosecutorial misconduct are largely the same set of facts that Viola alleges in his Complaint. These facts are disputed in this case and, in fact, serve as the basis for Viola's First Amended Complaint. Next, Exhibit A's alleged facts about prosecutorial misconduct are not "generally known" throughout the Northern District of Ohio. *Cf. Ohio Bell Tel. Co. v. Public Utils. Comm'n of Ohio*, 301 U.S. 292, 301 (1937) (explaining that courts take judicial notice of matters of "common knowledge," like economic depressions); *Carpenter v. Norfolk & W. Ry.*, 1998 WL 199723 at *4 (6th Cir. Apr. 16, 1998) (courts have the power to judicially notice general time/distance calculations). Finally, the accuracy of Exhibit A's source is dubious. Viola characterizes Exhibit A as a "news article," but Exhibit A contains heavily editorialized language better suited to an opinion column than a news article. Moreover, the electronic version of Exhibit A contains several hyperlink sources that direct readers to a website maintained by Viola himself, where he restates many of the same prosecutorial misconduct allegations found in his Amended Complaint. The Court declines to take judicial notice of a document whose contents are disputed, not generally known, and sourced from a website maintained by Plaintiff himself.

Moreover, although Viola argues that he seeks to make the Court aware of the existence of media coverage about alleged prosecutorial conduct, "he in reality asked for much more." *Platt*, 894 F.3d at 245. Viola's two-paragraph Motion is replete with indications that he wishes the Court to judicially notice Exhibit A's substance (the alleged prosecutorial misconduct), not merely Exhibit A's existence. For example, Viola captions his Motion as "Motion to Take Judicial Notice of Recent

11

News Articles Detailing *Prosecutorial Misconduct* by Mark Bennett and Dan Kasaris." (Doc. No. 32 at p. 1) (emphasis added.)  He also argues that "recent news articles" describe the "Justice Department's *illegal* 'win at all costs' style of litigation and *specifies misconduct* throughout the Plaintiff's criminal cases by defendants Mark Bennett and Dan Kasaris."  (*Id.*) (emphasis added.) Viola further states that Exhibit A is "one example of recent coverage of the *illegal actions of Bennett and Kasaris . . . .*" (*Id.*) (emphasis added.)  Viola's focus on Defendants' alleged misconduct indicates an attempt to obtain judicial notice of the alleged misconduct as fact.  This "runs afoul of the rule that notice of public documents is 'proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein.'"  *Platt*, 894 F.3d at 245 (quoting *Passa,* 123 Fed. Appx. at 697).

Accordingly, and for all the reasons set forth above, Viola's Motion to Take Judicial Notice (Doc. No. 32) is denied.

## IV.  Motions to Dismiss

### A.  Standards of Review under Fed. R. Civ. P. 12(b)(1), 12(b)(5), and (b)(6)

#### 1.  Fed. R. Civ. P. 12(b)(1)

The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County,* 847 F.3d 812, 816–17 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the complaint as true." *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007).  To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction.  *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th

12

Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME*, Local 11, 397 F.Supp.3d 1076, 1081-1082 (S.D. Ohio 2019).

A factual attack, on the other hand, "raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church,* 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc*., 491 F.3d at 330). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus*., 798 F.2d 913, 915 (6th Cir. 1986). The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

## 2.      Fed. R. Civ. P. 12(b)(5)

Pursuant to Rule 12(b)(5), "a trial court, upon motion, may dismiss a complaint for failure to make proper service of process." *Vitek v. AIG Life Brokerage*, 2007 WL 682431 at *2 (S.D. Ohio Feb. 27, 2007).  Indeed, "without proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012).  "And in the absence of personal jurisdiction, a federal court is 'powerless to proceed to an adjudication.'" *Id.* (quoting *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 584 (1999)).  In the context of Fed. R. Civ. P. 12(b)(5), "motions to dismiss need not be treated as motions for summary judgment even if they are supported by affidavits or other evidence outside the pleadings" because "the pleadings themselves will typically shed no light on service issues." *Boulger v. Woods*, 306 F. Supp. 3d 985, 993 (S.D. Ohio 2018), aff'd, 917 F.3d 471 (6th Cir. 2019).

## 3.      Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964).  Nonetheless, while "Rule 8

14

marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679.

### B.  Materials Considered in resolving Motions to Dismiss

Prior to reaching the merits of the Defendants' various Motions to Dismiss, the Court clarifies the materials that will be considered in resolving those Motions.  The record reflects that Viola attaches the following seven exhibits to his Consolidated Brief in Opposition to Defendants' Motions to Dismiss:

(1) Exhibit A:  a one-page document entitled "Case Information" that purports to show the parties and counsel involved in a domestic matter captioned *Kathryn Clover v. Matthew Fairfield*, Case No. DR-10-330101 (Cuyahoga County) (Doc. No. 37-1);

(2) Exhibit B:  the cover sheet of a transcript of proceedings in the matter of *United States v. Kathryn Clover*, Case Nos. 1:10cr75, 1:08cr506 (Doc. No. 37-2);

(3) Exhibit C:  a one-page document entitled "Case Information" relating to *State of v. Matthew Fairfield*, Case No. CA-11-097466 (Doc. No. 37-3);

(4) Exhibit D: a series of emails allegedly between Defendant Kasaris and Kathryn Clover dated February 2012 (Doc. No. 37-4);

(5) Exhibit E: a sworn affidavit of Matthew Fairfield dated July 27, 2020 (Doc. No. 37-5);

(6) Exhibit F:  an affidavit from Bryan Butler dated July 28, 2020 (Doc. No. 37-6); and

(7) Exhibit G: a series of emails allegedly between Defendant Kasaris, Kathryn Clover, and an individual identified only as "Sarah," dated January and February 2012 (Doc. No. 37-7).

Viola references these Exhibits throughout his Brief in Opposition and explicitly relies on them in opposing the various Defendants' Motions to Dismiss.  (Doc. No. 37.)

The Federal Defendants, State Defendants, and Defendant O'Malley object to the above exhibits, arguing that they are not properly before this Court.  (Doc. No. 39 at p. 3; Doc. No. 47 at pp. 5; Doc. No. 48 at pp. 1-2.)  Specifically, these Defendants assert that none of the documents attached to Viola's Consolidated Brief in Opposition were referenced in, or attached to, his First Amended Complaint and, therefore, they may not be considered in resolving Defendants' Motions to Dismiss.

In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.  *See also Brent v. Wayne County Dep't of Human Services*, 901 F.3d 656, 694 (6th Cir. 2018); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).  Under Rule 12(d), "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  If a motion to dismiss is converted to a motion for summary judgment, the court must give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

Here, the Court will not consider Exhibits D, E, F, and G to Viola's Consolidated Brief in Opposition; i.e., the email chains, Fairfield Affidavit, and Bryan Affidavit.  These exhibits are not referenced in or attached to the First Amended Complaint.  Nor has Viola demonstrated that any of these specific Exhibits are central to his claims.  Further, Viola has neither argued, nor demonstrated, that Exhibits D, E, F, or G are subject to judicial notice under Fed. R. Evid. 201(b).  Accordingly, the Court will not consider these Exhibits in resolving Defendants' Motions to Dismiss.

Exhibits A and C purport to be incomplete portions of state court docket sheets in various matters involving Kathryn Clover or her former husband, Matthew Fairfield.  Exhibit B purports to be one page from a transcript of criminal proceedings conducted in the Northern District of Ohio before District Judge Nugent on September 28, 2011 in the matter of *United States v. Kathryn Clover, et al.*, Case Nos. 1:08cr506 and 1:10cr75.  It appears that Viola attached these Exhibits to his Consolidated Brief in Opposition for the purpose of demonstrating that (1) Defendant Schlachet represented Ms. Clover in her 2010 divorce proceedings against Matthew Fairfield (Exhibit A, Doc. No. 37-1); (2) Defendant Schlachet represented Ms. Clover in federal criminal proceedings before Judge Nugent in 2011 (Exhibit B, Doc. No. 37-2); and (3) Defendant Kasaris prosecuted Mr. Fairfield in state court in 2011 (Exhibit C, Doc. No. 37-3.)  Viola argues these Exhibits are relevant because they show that Defendant Schlachet "has simultaneously represented Dan Kasaris and Dan Kasaris' girlfriend, Kathryn Clover, and is part of a cover up of Dan Kasaris's romantic relationship with Kathryn Clover."  (Doc. No. 37 at p. 2.)

A court may take judicial notice of the existence of court documents and the proceedings in which those documents were generated.  *See also Rodic v. Thistledown Racing Club*, 615 F.2d 736, 738 (6th Cir. 1980) (holding that "federal courts may take judicial notice of proceedings in other courts of record") (citation omitted).  However, federal courts do not generally take judicial notice of the truth of any statement of fact contained within those documents.  *See e.g., Embassy Realty Investments LLC. v. City of Cleveland*, 877 F.Supp.2d 564, 571 (N.D. Ohio 2012) (noting that, while a court may take judicial notice of the existence of public records, "this is not to say, however, that the facts contained within these public records are [necessarily] appropriate for consideration by the Court.").

Here, the Court will take judicial notice of the fact that, consistent with Exhibit A to Viola's Consolidated Brief in Opposition, the state court docket sheet in Ms. Clover's 2010 divorce proceedings indicates that she was represented in those proceedings by Defendant Schlachet. *See Kathryn Clover-Fairfield v. Matthew Fairfield*, Case No. DR-10-330101 (Cuy. Cty. Ct. Cmn. Pl.) (docket sheet). In addition, the Court will take judicial notice of the fact that, consistent with Exhibit B to Viola's Consolidated Brief in Opposition, the transcript of the proceedings held before District Judge Nugent in the matter of *United States v. Kathryn Clover,* Case Nos. 1:10cr75, 1:08CR506 indicates that Ms. Clover was represented at that time in those proceedings by Defendant Schlachet. *See U.S. v. Clover*, Case No. 1:10cr75 (N.D. Ohio) (Doc. No. 41.) Finally, the Court will also take judicial notice of the fact that, consistent with Exhibit C to Viola's Consolidated Brief in Opposition, the state appellate court docket sheet indicates that Defendant Kasaris represented the State of Ohio in Mr. Fairfield's direct appeal from his state conviction and sentence. *See State of Ohio vs. Matthew Fairfield*, Case No. CA-11-097466 (Ohio App. 8th Dist. Ct. App.) The Court emphasizes, however, that it takes judicial notice only of the existence of the above, and not of the truth of any statement of fact related to those proceedings.

### C.    Federal Defendants

As noted *supra*, Viola names the following Federal Defendants in his First Amended Complaint: (1) United States Attorney for the Northern District of Ohio Justin Herdman; (2) AUSAs Mark Bennett, John Moustakas and Laura Irwin; (3) former United States Attorney Steven Dettelbach; and (4) former AUSA John Siegel. (Doc. No. 25.) Viola alleges that Defendants Bennett and Siegel were AUSAs that prosecuted him during his federal criminal trial. (*Id.* at p. 9.) He alleges that Defendants Herdman and Dettelbach had "obligations as supervisory officials who oversee

18

prosecutors" by virtue of their positions as United States Attorney for the Northern District of Ohio. (*Id*. at p. 10.)  Viola alleges that Defendants Irwin and Moustakas "are employed by the Department of Justice and have contested every single claim made by Plaintiff in post-conviction litigation." (*Id*.)

In the First Amended Complaint, Viola alleges that Defendants Bennett and Siegel engaged in various forms of prosecutorial misconduct, including (1) suppressing exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1983); (2) knowingly using the perjured testimony of Ms. Clover in violation of *Napue v. Illinois*, 360 U.S. 264 (1959); and (3) invading Viola's right to counsel to obtain confidential defense trial strategy information in violation of *Massiah v. United States*, 377 U.S. 201 (1964).   (*Id*. at p. 13.)  He alleges that each of the Federal Defendants were aware of the above prosecutorial misconduct, as well as alleged misconduct by Defendant Kasaris, but improperly failed to report it in violation of  28 C.F.R. §§ 45.11 and 45.12; the United States Attorney's Manual § 9-5.001C; American Bar Association Committee on Ethics and Professional Responsibility Formal Opinions 09-454 (2009) and 14-467 (2014); and the Ohio Rules of Professional Conduct.  (*Id*. at p. 12.)

As relevant to the Federal Defendants, Viola asks the Court for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that:

a.    Plaintiff has a right to demand compliance with the Code of Federal Regulations and the Rules of Professional Conduct governing attorneys;

b.    That the defendants are in breach of those lawful obligations;

c.    That each and every defendant is obligated, without further delay, to report misconduct to the proper authorities

(*Id*. at p. 11.)  Viola does not seek either monetary damages or injunctive relief.

19

The Federal Defendants move to dismiss Viola's First Amended Complaint for (1) lack of subject matter jurisdiction pursuant to Rule 12(b)(1); (2) insufficient service of process pursuant to Rule 12(b)(5); and (3) failure to state a claim pursuant to Rule 12(b)(6).  (Doc. No. 30.)  The Court will address these bases for dismissal separately, below.

### 1.    Subject Matter Jurisdiction

The Federal Defendants argue that this Court lacks subject matter jurisdiction over the instant action for several reasons.  (Doc. No. 30 at pp. 3-7.)  First, the Federal Defendants assert that Viola has sued each of them in their official capacities and, therefore, they are entitled to sovereign immunity.  (*Id*.)  The Federal Defendants assert that Viola has failed to identify an applicable waiver of sovereign immunity, arguing that none of the federal statutes identified in the First Amended Complaint (i.e., 28 U.S.C. §§ 1331, 1391, 2201 or 2202) confer jurisdiction over the instant suit.  (*Id*.)  Second, the Federal Defendants argue that "[t]his Court lacks subject matter jurisdiction over Plaintiff's petition for a declaratory judgment because Plaintiff's sole remedy, to the extent that he claims his criminal conviction is invalid due to prosecutorial misconduct, is by way of a petition for a writ of habeas corpus."  (*Id*.)  Third, and finally, the Federal Defendants argue that, to the extent the First Amended Complaint alleges a failure to comply with the Ohio Rules of Professional Conduct ("ORPC"), his claims should be dismissed because this Court does not have jurisdiction to rule on alleged violations of the ORPC.  (*Id.*)

In his Brief in Opposition, Viola argues that this Court has subject matter jurisdiction over the instant matter pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C.A. §§ 702-703.  (Doc. No. 37 at p. 1.)  Noting that the APA applies "to compel agency action unlawfully withheld or unreasonably delayed," Viola argues that the First Amended Complaint "cites the Code of Federal

20

Regulations, as well as other controlling legal authorities, stating that defendants have an obligation to take a discrete action—namely, report misconduct by" Defendants Bennett and Kasaris.  (*Id*.)  Viola further argues that 28 U.S.C. § 530(B)(a) "provides that all federal attorneys are subject to the same state laws and rules, as well as local federal court rules, that govern attorneys in the state where the attorney practices."  (*Id*.)  He further claims that "other statutes relevant to this matter include" the Jencks Act, 18 U.S.C. § 3500; the Federal Rule of Criminal Procedure 16; and the United States Attorneys' Manual Section 1-4.100.  (*Id.* at pp. 1-2.)

In reply, the Federal Defendants argue that the APA does not provide a waiver of sovereign immunity in the instant action.  (Doc. No. 47.)  Defendants assert that "the challenged action here is simply the Federal Defendants' obligation to report allegations of misconduct within government agencies, or to other government agencies," and argue that "these reporting requirements do not create rights as to private litigants."  (*Id.* at p. 2.)  Thus, the Federal Defendants assert that the APA is inapplicable to the instant case.  (*Id.*)

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *Munaco v. United States*, 522 F.3d 651, 652–53 (6th Cir.2008) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).  In other words, "the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex. rel Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 287 (1983).  Sovereign immunity "extends to the agencies of the United States" or "federal officers [acting] in their official capacities." *Whittle v. United States*, 7 F.3d 1259,1262 (6th Cir.1993).  *See also Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013).  A waiver of sovereign immunity may not be implied and exists only when Congress has

expressly waived immunity by statute.  *Id*. (citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33 (1992)).

The Court first considers in what capacity Viola has sued Defendants Bennett, Siegel, Herdman, Dettelbach, Irwin and Moustakas; i.e., whether he has sued them in their individual capacities, official capacities, or both.  The Federal Defendants argue that Viola has sued them in their official capacities only, noting that the First Amended Complaint expressly requests that the Court "declare that each defendant, *in their professional capacity*, is required to report the credible allegations of misconduct described herein."  (Doc. No. 25 at p. 7) (emphasis added).  Viola does not address this issue in his Consolidated Brief in Opposition or otherwise argue that he has sued any of the Federal Defendants in their individual capacities.

While the First Amended Complaint does not explicitly indicate whether the Federal Defendants are sued in their individual and/or official capacities, the Court finds, for the following reasons, that Viola has sued the Federal Defendants in their official capacities only.  The Amended Complaint identifies the Federal Defendants by their official titles and the only allegations against these Defendants concern actions taken in their official capacities.  Additionally, the First Amended Complaint specifically references the Defendants' alleged obligations "in their professional capacities" and does not, at any point, make any reference the Defendants' alleged conduct or obligations in their individual capacities.  (Doc. No. 25 at PageID#205.)  Moreover, Viola expressly alleges that the bases for the Federal Defendants' purported obligation to report misconduct arises from Defendants' duties under 28 C.F.R. §§ 45.11 and 45.12, the "United States Attorney's Manual," and the ORPC, each of which relate to these Defendants' professional obligations in their official capacities as United States Attorneys and Assistant United States Attorneys.  In light of the above,

22

the Court finds that the First Amended Complaint fails to provide adequate notice to the Federal Defendants that they are being sued in their individual capacities. *See, e.g., Moralez v. EEOC*, 2019 WL 1369980 at * 2 (W.D. Mich. Feb. 25, 2019) (finding federal defendants were sued in their official capacities, in part, because "Plaintiff's motion for mandamus/complaint fails to provide adequate notice to [defendants] Cober or Lipnic that they face personal liability in this matter."), *adopted by*, 2019 WL 1367761 (W.D. Mich. March 26, 2019).

Accordingly, because the Federal Defendants are being sued in their official capacities only, Viola's claims are, in fact, asserted against the United States Department of Justice. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a suit against a government official in his or her official capacity is equivalent to a suit against the entity itself.); *Greene v. U.S. Department of Justice*, 2019 WL 5395442 at * 5 (E.D. Ky. Oct. 22, 2019) ("Thus, an official capacity suit against an employee of the BOP or the DOJ is a suit against the BOP or DOJ itself, which are federal agencies.") Thus, the Federal Defendants may assert sovereign immunity. *See Steele v. United States*, 2020 WL 1814135 at * 4 (S.D. Ohio Apr. 9, 2020) ("And, where a federal officer is sued in his or her official capacity, the federal officer may assert sovereign immunity.") (citing *Lewis v. Clarke*, ––– U.S. ––––, 137 S. Ct. 1285, 1286-87, 197 L.Ed.2d 631 (2017)), *adopted by*, 2020 WL 3489230 (S.D. Ohio June 26, 2020).

As noted above, a "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Muniz-Muniz*, 741 F.3d at 671. *See also Thompson v. McHugh*, 388 Fed. Appx. 870, 873 (6th Cir. 2010). Here, the only federal

23

statutes referenced in the First Amended Complaint are 28 U.S.C. §§ 1331, 2201, 2202.[4]  For the following reasons, the Court finds that none of these statutes waive sovereign immunity.

Section 1331 of Title 28 provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  This provision is generally referred to as the federal question jurisdiction statute.  However, the relevant question is not whether Plaintiff's claims arise under federal law, but instead whether the United States has consented to being sued.  "On this question, § 1331 is silent and does not constitute a waiver of sovereign immunity."  *Moralez*, 2019 WL 1369980 at * 2.  *See also Whittle,* 7 F.3d at 1262 ("The federal question jurisdictional statute is not a general waiver of sovereign immunity; it merely establishes a subject matter that is within the competence of federal courts to entertain.") *Sanzotta v. City of Ann Arbor*, 2016 WL 3878260 at * 4 (E.D. Mich. July 18, 2016); *Andrews v. Martinez*, 2002 WL 31368850 at * 2 (S.D. Ohio Aug. 21, 2002).

Nor does the Declaratory Judgment Act, 28 U.S.C. §§ 2201- 2202, constitute a waiver of sovereign immunity.  As one court explained, "the Declaratory Judgment Act neither provides an independent basis for subject matter jurisdiction nor waives [a federal government agency's] sovereign immunity.  The Act merely grants the Court the power to issue declaratory judgments when jurisdiction otherwise exists."  *Normandy Pointe Associates v. FEMA*, 105 F.Supp.2d 822, 826-827 (S.D. Ohio 2000).  *See also Andrews*, 2002 WL 31368850 at * 3 ("[T]he Court concludes that the Declaratory Judgment Act does not constitute a waiver of the sovereign immunity of the United States."); *CBST Acquisition LLC v. United States*, 2019 WL 688597 at * 3 (S.D. Ohio Feb. 19, 2019)

---

[4] Viola also references 28 USC § 1391 in the First Amended Complaint.  This statute, however, relates to venue and is not relevant to the issue of sovereign immunity.

24

(noting that "the Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide for a waiver of sovereign immunity and is not an independent source of federal jurisdiction"), *adopted by*, 2019 WL 1125575 (S.D. Ohio March 12, 2019).

Viola does not, in fact, argue that 28 U.S.C. §§ 1331, 2001 or 2002 constitute a waiver of sovereign immunity.  Rather, Viola argues that the United States has waived its sovereign immunity under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*.  The Court agrees with Viola that, under certain circumstances, the APA can constitute a waiver of the sovereign immunity of the United States.  *See* 5 U.S.C. § 702. Specifically, Section 702 provides, in pertinent part, as follows:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. *** Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.  In the instant case, however, Viola does not allege in the First Amended Complaint either that he is bringing this litigation under the APA, that the APA otherwise applies, or that the APA constitutes a waiver of sovereign immunity.  Indeed, a careful review of the First Amended Complaint reveals that there is no mention of the APA at any point in that pleading.  Viola may not assert, in his Consolidated Brief in Opposition, a basis for the waiver of sovereign immunity that is not clearly plead and asserted in his First Amended Complaint.  *See Andrews*, 2002 WL 31368850 at * 3-4.

25

Accordingly, and for all the reasons set forth above, the Court finds that Viola has failed to plead a basis for the waiver of sovereign immunity with respect to his claims against the Federal Defendants.[5]  Therefore, Viola's claims against the Federal Defendant are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.[6]  Moreover, as discussed below, even assuming *arguendo* that this Court did possess subject matter jurisdiction over the instant action, the Court finds that the Federal Defendants would be subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process.

### 2.    Insufficient Service of Process

The Federal Defendants next argue that Viola's attempts at service fail to comply with Fed. R. Civ. P. 4(i) because Viola failed to either (1) timely serve a properly-issued summons on Defendants Herdman, Bennett, Dettelbach, Siegel, Irwin or Moustakas; or (2) serve the Attorney General of the United States.  (Doc. No. 30-1 at p. 10-11.)  The Federal Defendants further assert that Viola has failed to establish good cause for the deficient service.  (*Id.*)  Viola fails to address this issue in his Consolidated Brief in Opposition.  (Doc. No. 37.)

As the Sixth Circuit has noted, the requirement of proper service of process "is not some mindless technicality."  *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991).  *See also*

---

[5]  The Court notes that Viola has not argued that 28 C.F.R. §§ 45.11, 45.12, the United States Attorneys' Manual, or the ORPC constitute a waiver of sovereign immunity.  Even if he had raised such an argument, it would be without merit.  Viola has cited no authority (and the Court is aware of none) that the above regulations, manual, or rules of professional responsibility constitute waivers of sovereign immunity.  In addition, Viola's references in his Consolidated Brief in Opposition to 28 U.S.C. § 530(B)(a) and the Jencks Act, 18 U.S.C. § 3500 are unavailing.  Even assuming *arguendo* that either of these statutes could be considered to constitute a waiver of sovereign immunity (a position for which Viola cites no authority), Viola failed to plead either of these statutes in his First Amended Complaint.

[6]  Although Viola describes alleged violations of *Brady*, *Napue*, and *Massiah* in the Amended Complaint, he does not argue that that he has plead any civil rights claims against the Federal Defendants for alleged violations of his constitutional rights during his federal criminal trial.  Upon review, the Court finds that, even construing the *pro se* Amended Complaint liberally, it does not allege any such claims.

*Federal Trade Commission v. Repair All PC, LLC*, 2017 WL 2362946 at * 2 (N.D. Ohio May 31, 2017). Rather, service of a summons and complaint "must meet constitutional due process and the requirements of the federal rules in order for jurisdiction to exist over a defendant." *Federal Trade Commission*, 2017 WL 2362946 at * 2.

Federal Rule of Civil Procedure 4(i) sets forth the requirements for perfecting service on the United States, as follows:

**(i) Serving the United States and Its Agencies, Corporations, Officers, or Employees.**

(1) *United States*. To serve the United States, a party must:

(A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought--or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

(ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

(B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

(C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

(2) *Agency; Corporation; Officer or Employee Sued in an Official Capacity*. To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

Fed. R. Civ. P. 4(i). Rule 4(i)(4) further provides that "[t]he court must allow a party a reasonable time to cure its failure to . . . serve a person required to be served under Rule 4(i)(2) if the party has

27

served either the United States attorney or the Attorney General of the United States." Fed. R. Civ. P. 4(i)(4).

Also relevant is Rule 4(m), which provides for the time limit for service as follows:

(m) Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service must be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Rule 4(m) requires a court to undertake a two-part analysis. First, the court must determine whether the plaintiff has shown good cause for the failure to effect service. *Stewart v. Tennessee Valley Authority*, 2000 WL 1785749 at *1 (6th Cir. 2000). If the plaintiff establishes good cause, the court must "extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). *See also Salem v. City of Akron,* 2020 WL 1233953 at * 2-3 (N.D. Ohio March 13, 2020); *Warrior Imports, Inc. v. 2 Crave*, 317 F.R.D. 66, 69 (N.D. Ohio Mar. 29, 2016). Second, if the plaintiff is unable to establish good cause, the court must either (1) dismiss the action without prejudice, or (2) direct that service be perfected within a specified time. *Stewart,* 2000 WL 1785749 at *1. *See also Terrell v. Tallman*, 2018 WL 7077920 at * 2 (N.D. Ohio Sept. 20, 2018), *adopted by,* 2019 WL 26632 (N.D. Ohio Jan. 18, 2019); *Workman v. University of Akron*, 2017 WL 1113332 at *1 (N.D. Ohio Mar. 24, 2017); *Tanksley v. Tennessee Valley Authority*, 2017 WL 6391473 at *3 (E.D. Tenn. Dec. 14, 2017).

Plaintiff bears the burden of establishing good cause, which "necessitates a demonstration of why service was not made within the time constraints." *Nafziger v. McDermott Intern., Inc*., 467 F.3d 514, 521 (6th Cir. 2006) (quoting *Habib v. General Motors Corp.,* 15 F.3d 72, 73 (6th Cir. 1994)). Generally, "good cause" means "a reasonable, diligent effort to timely effect service of

28

process." *Pearison v. Pinkerton's Inc*., 90 Fed. Appx 811, 813 (6th Cir. 2004). *See also Johnson v. Smith,* --- Fed. Appx. ---, 2021 WL 289316 at * 1 (6th Cir. Jan. 28, 2021).   The Sixth Circuit has also suggested that a plaintiff may meet this burden by offering an explanation equivalent to "at least as much as would be required to show excusable neglect," though "simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Moncrief v. Stone*, 961 F.2d 595, 597 (6th Cir. 1992) (quoting *Winters v. Teledyne Movable Offshore, Inc*., 776 F.2d 1304, 1305 (5th Cir. 1985)). Finally, some courts have found that "extraordinary circumstances may give rise to good cause excusing untimely service." *Powell v. Med. Dep't Cuyahoga Cty. Corr. Ctr*., 2018 WL 3241243 at *2 (N.D. Ohio July 3, 2018) (citing *Habib*, 15 F.3d at 73 (finding good cause where a seriously ill *pro se* plaintiff made a good faith effort to perfect service)).

The Court first considers whether Viola has properly served the Federal Defendants under Rule 4(i).  As applied to the instant case, that Rule required Viola to perfect service upon each of the Federal Defendants, the United States Attorney for the Northern District of Ohio, and the Attorney General of the United States.

The record reflects the following.  The Complaint in this matter was originally filed on March 30, 2020.  On May 28, 2020, the United States Attorney's Office for the Northern District of Ohio received a summons for Defendants Herdman and Bennett.  (Doc. No. 15-1.)  This summons was not signed by the Clerk and did not bear the Court's seal, as required by Fed. R. Civ. P. 4(a)(1)(F) & (G). In addition, on June 3, 2020, Defendant Dettelbach received a summons at his current business address in downtown Cleveland.  (Doc. No. 15-2.)  The summons did not identify any specific defendant, was not signed by the Clerk, and did not bear the Court's seal, as required by Fed. R. Civ.

P. 4(a)(1)(B), (F) & (G).  There is no indication on the docket that any summonses were issued for, or served on, Defendants Irwin or Moustakas, or on the Attorney General of the United States.

On June 26, 2020, the Federal Defendants filed a "Notice of Deficient Service," which specifically identified the above deficiencies.  (Doc. No. 15.)  Viola filed a Response on July 10, 2020, in which he indicated that "the attached documents confirm the undersigned has made good faith efforts to serve the Defendants with the complaint in this matter."  (Doc. No. 18.)  Viola further stated that "such efforts are continuing."  (*Id*.)  Attached to Viola's response was Notice of Lawsuit and Request to Waive Service of Summons dated July 7, 2020, which was sent to the United States Attorney's Office, care of Ruchi Asher, counsel for Defendants Herdman, Bennett, Dettelbach, Siegel, Irwin, and Moustakas.  (Doc. No. 18-1 at PageID#s 172-174.)

Shortly thereafter, on July 29, 2020, Viola filed his First Amended Complaint.  (Doc. No. 25.) The following day, the Clerk's Office issued original summons to Viola for service upon Defendants Herdman, Bennett, Dettelbach, Siegel, Irwin, and Moustakas.  (Doc. No. 26.)  The summonses for each of these Defendants were directed to the United States Attorney's Office only.  (*Id.*)

There is no indication on the docket of any further service activity with respect to the Federal Defendants.  Specifically, there is nothing on the docket indicating either that (1) the Federal Defendants waived service; (2) that service was returned executed with regard to the summonses issued on July 29, 2020; or (3) that service was attempted or returned executed on the Attorney General of the United States.

Based on the above, the Court finds that Viola failed to perfect service on the Federal Defendants pursuant to Fed. R. Civ. P. 4(i).  The summonses received by Defendants Herdman, Bennett, and Dettelbach in May and June 2020, respectively, did not comply with Rule 4(a) and were

not returned executed.  In addition, there is no indication on the docket that the summonses issued to Defendants Herdman, Bennett, Dettelbach, Siegel, Irwin and Moustakas were, in fact, served and returned executed on the United States Attorney for the Northern District of Ohio.[7]  Nor is there any indication on the docket that the Federal Defendants waived service.  Further, and notably, there is no indication on the docket that, at any point in time, Viola served (or even attempted to serve) the Attorney General of the United States, as required by Rule 4(i)(1)(B).  Finally, although he had the opportunity to do so, Viola has not argued or demonstrated that he properly and timely perfected service on any of the Federal Defendants.  Accordingly, the Court finds that Viola has failed to perfect service on Defendants Herdman, Bennett, Detttelbach, Siegel, Irwin, or Moustakas.

The Court next considers whether Viola has established good cause for his failure to timely perfect service.  The Federal Defendants argue that Viola has failed to establish good cause.  (Doc. No. 30-1.)  Defendants note that this matter has been pending for nearly a year and argue that Viola's *pro se* status does not excuse his failure to timely perfect service.  (*Id.*)  Viola did not respond to Defendants' arguments on this issue.  (Doc. No. 37.)

For the following reasons, the Court finds that Viola has failed to demonstrate good cause for his failure to timely perfect service on the Federal Defendants.  As noted above, this action has been pending for over ten months.  Viola has been aware for over seven (7) months that service had not been perfected on the Federal Defendants; i.e., since the Federal Defendants filed their Notice of Deficient Service on June 26, 2020.  Moreover, although Viola was subsequently issued proper summons for the Federal Defendants after the filing of the First Amended Complaint, the docket does

---

[7] Pursuant to Fed. R. Civ. P. 4(l), Viola was required to file proof of service with the Court.  *See* Fed. R. Civ. P. 4(l)) ("Unless service is waived, proof of service must be made to the court.  Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit.")

not reflects that he thereafter properly served these summonses, or that he ever served the Attorney General for United States.  Finally, Viola does not oppose Defendants' Motion on this basis and, thus, does not argue the existence of good cause or otherwise offer any explanation for his failure to effect service as to these Defendants.  Under the circumstances, the Court finds that Viola has failed to demonstrate good cause.

Nor has Viola argued or demonstrated that this Court should allow him additional time to perfect service.  Notably, although having had ample opportunity to do so, Viola has not asked this Court, in any of briefing in response to the Federal Defendants' Motion to Dismiss, for further opportunity to perfect service on the Federal Defendants.  The Court finds no reason to *sua sponte* order it under the circumstances presented.  The Complaint in this matter was filed in March 2020 and Viola has been aware for at least the last seven (7) months that service was not perfected on the Federal Defendants.  In light of the above, and absent any argument to the contrary, the Court finds that, even assuming *arguendo* that it had subject matter jurisdiction over the Federal Defendants, these Defendants would be subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process.

Accordingly, and for all the reasons discussed above, the Federal Defendants' Motion to Dismiss is granted to the extent it seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and (5).[8]

### D.    State Defendants

Viola names the following five State Defendants in the First Amended Complaint: (1) Ohio Attorney General Dave Yost; (2) Assistant Attorney Generals Daniel Kasaris, Micah Ault, and

---

[8] Because the Court lacks jurisdiction over Viola's claims against the Federal Defendants for the reasons set forth above, the Court cannot, and will not, reach the Federal Defendants' arguments that Viola's claims are subject to dismissal under Rule 12(b)(6).

Heather Buchanan; and (3) former Assistant Attorney General Tiffany Carwile. (Doc. No. 25.) With regard to Defendants Ault and Kasaris, Viola alleges that these Defendants prosecuted him "yet failed to report misconduct throughout the criminal proceedings." (*Id*. at p. 9.) Viola maintains that Defendant Kasaris (1) failed to produce exculpatory evidence before trial; (2) intruded into Viola's Sixth Amendment right to counsel by instructing Ms. Pasela to "spy" on his defense team; (3) knowingly used the perjured testimony of Ms. Clover; and (4) engaged in an inappropriate relationship with Ms. Clover. (*Id*. at pp. 1-5.) Viola also claims that Defendant Kasaris improperly threatened to prosecute him under Ohio Rev. Code § 2921.03(A) for statements that appeared on www.freetonyviola.com. (*Id*. at p. 6-7.)

With regard to Defendant Yost, Viola alleges that he had "obligations as a supervisory official[] who oversee[s] prosecutors." (*Id*. at p. 10.) Viola asserts that Defendant Yost has repeatedly been made aware of wrongdoing by Bennett and Kasaris and has an obligation to report said misconduct "to the proper authorities, including the Department of Justice's Office of the Inspector General, yet ha[s] failed to follow these lawful obligations." (*Id*.)

Finally, with regard to Defendants Buchanan and Carwile, Viola alleges as follows:

(8)  Defendants Heather Buchanan and Tiffany Carwile have also been made aware of improper actions by Prosecutor Kasaris but have defended his actions in court, and utilized an unconstitutional statute in their defense. When the undersigned objected to Kasaris' threats to prosecute the undersigned, and others, under Ohio Revised Code 2921.03(a), Carwile and Buchanan argued that Kasaris was not acting under color of law, but in a personal capacity, as any citizen could file a criminal complaint or contact Facebook, Viola v. Kasaris, Case No. 2:16-1036, S.D. Ohio. Carwile and Buchanan defended Kasaris' supposedly private actions in court at taxpayer expense in court, despite a prohibition on the Ohio Attorney General defending the non-official actions of employees of that office. Not only have defendants Carwile and Buchanan used taxpayer funds to defend Kasaris' allegedly personal actions for free, they have also failed to report his misconduct to the Ohio Supreme Court.

(*Id*. at pp. 10-11.)

As relevant to the State Defendants, Viola asks the Court for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that:

a.  Plaintiff has a right to demand compliance with the Code of Federal Regulations and the Rules of Professional Conduct governing attorneys;

b.  That the defendants are in breach of those lawful obligations;

c.  That each and every defendant is obligated, without further delay, to report misconduct to the proper authorities;

d.  That Ohio Revised Code § 2921.03(A) is unconstitutional; and

e.  That Prosecutor Kasaris was not entitled to taxpayer funded legal services by the Ohio Attorney General's Office for his purportedly private actions.

(*Id*. at p. 11.)  Viola does not seek either monetary damages or injunctive relief.

The Court will address each of Viola's claims in turn, below.

### 1.  Alleged Duty to Report Misconduct

Viola first seeks a declaratory judgment that each of the State Defendants have ongoing duties under federal and state law to report the alleged misconduct described in the First Amended Complaint.  In their Motion to Dismiss, the State Defendants argue that Viola fails to state a claim with regard to any alleged reporting duties under the Code of Federal Regulations because such regulations do not apply to the State Defendants or otherwise provide a private cause of action.  (Doc. No. 34 at p. 1, 6-7.)  The State Defendants next assert that this Court lacks jurisdiction over Viola's claim regarding the State Defendants' alleged reporting obligations under the Ohio Rules of Professional Conduct because the Ohio Supreme Court has exclusive jurisdiction over any such claims.  (*Id*. at pp. 10-11.)  Finally, the State Defendants maintain generally that any state claims that could be construed as being plead in the First Amended Complaint are barred by the Eleventh

34

Amendment because the State of Ohio has not waived immunity to any such claims.  (*Id*. at pp. 11-12.)

Viola does not specifically respond to any of the above legal arguments in his Consolidated Brief in Opposition. (Doc. No. 37.)

**a.  Alleged Duties under Federal Law**

For the following reasons, the Court finds Viola's claims regarding the State Defendants' alleged reporting obligations under 28 C.F.R. §§ 45.11 and 45.12 are subject to dismissal for failure to state a claim as a matter of law.  Section 45.11, entitled "Reporting to the Office of Inspector General," provides as follows:

> **Department of Justice employees** have a duty to, and shall, report to the Department of Justice Office of the Inspector General, or to their supervisor or their component's internal affairs office for referral to the Office of the Inspector General:
>
> (a) Any allegation of waste, fraud, or abuse in a Department program or activity;
>
> (b) Any allegation of criminal or serious administrative misconduct on the part of a Department employee (except those allegations of misconduct that are required to be reported to the Department of Justice Office of Professional Responsibility pursuant to § 45.12); and
>
> (c) Any investigation of allegations of criminal misconduct against any Department employee.

28 C.F.R. 45.11 (emphasis added).  Section 45.12, entitled "Reporting to the Department of Justice Office of Professional Responsibility," provides:

> **Department employees** have a duty to, and shall, report to the Department of Justice Office of Professional Responsibility (DOJ–OPR), or to their supervisor, or their component's internal affairs office for referral to DOJ–OPR, any allegations of misconduct by a Department attorney that relate to the exercise of the attorney's authority to investigate, litigate or provide legal advice, as well as allegations of misconduct by law enforcement personnel when such allegations are related to allegations of attorney misconduct within the jurisdiction of DOJ–OPR.

35

28 C.F.R. § 45.12 (emphasis added). The Court finds that, by their very terms, 28 C.F.R. §§ 45.11 and 45.12 apply only to Department of Justice ("DOJ") employees. As the Ohio Attorney General, Defendant Yost is not a DOJ employee and, therefore, is not subject to these regulations. Nor are State Defendants Kasaris, Ault, Buchanan, and Carwile, each of whom currently serve as Assistant Attorney Generals for the State of Ohio. Moreover, there are no allegations in the First Amended Complaint that Defendants Yost, Kasaris, Buchanan, or Carwile ever served, at any point in time, as employees of the United States Department of Justice.[9]

Thus, Viola's request for a declaratory judgment that the State Defendants had a duty to report misconduct under 28 C.F.R. §§ 45.11 and 45.12 fails as a matter of law.[10] The State Defendants' Motion to Dismiss this claim is granted.

### b. Alleged Duties under the ORPC

Viola also seeks a declaratory judgment regarding the State Defendants' alleged violation of their duties under the Ohio Rules of Professional Conduct. The Court agrees with the State Defendants that this claim is subject to dismissal as a matter of law because "jurisdiction to rule on alleged disciplinary violations lies exclusively with the Ohio Supreme Court." *See, e.g., Rodojev v. Sound Com Corp.*, 2010 WL 5811886 at * 6 (N.D. Ohio Dec. 30, 2010) (finding that "jurisdiction to rule on alleged disciplinary violations lies exclusively with the Ohio Supreme Court."), *adopted by*,

---

[9] As noted *supra*, Viola alleges that Defendant Ault (who is currently a State Assistant Attorney General) was one of the AUSAs that prosecuted his federal criminal case. To the extent Viola's claims against Defendant Ault relate to the time period when he was employed by the Department of Justice, they are subject to dismissal for the reasons discussed in connection with the Federal Defendants, *supra*.

[10] Further, Viola cites no authority (and the Court is not aware of any) that either ABA "Formal Opinion 14-467" or "National Prosecution Standard 1-1.6" create legally enforceable duties on the State Defendants under the circumstances presented herein. Therefore, to the extent that Viola requests a declaratory judgment that the State Defendants had a duty to report misconduct under either of these sources, any such claims likewise fail as a matter of law.

2011 WL 589059 (N.D. Ohio Feb. 10, 2011). *See also Fred Siegel Co. v. Arter & Hadden*, 85 Ohio St.3d 171, 178 (1999) (stating that "the power to determine violations of the Disciplinary Rules is reserved to this court."); *Fitzwater v. Woodruff*, 2006 WL 3833972 at *3 (Ohio Ct. App. Dec. 28, 2006). In addition, both the Sixth Circuit and the Ohio Supreme Court have held that the Ohio Rules of Professional Conduct do not create a private cause of action. *See, e.g., Kafele v. Frank & Wooldridge Co*., 108 Fed. Appx. 307, 309 (6th Cir. 2004); *Fred Siegel Co., L.P.A*., 85 Ohio St.3d at 178. *See also Lloyd v. Pokorny*, 2020 WL 5366109 at * 3 (S.D. Ohio Sept. 8, 2020).

Accordingly, Viola's request for a declaratory judgment that the State Defendants had a duty to report misconduct under the Ohio Rules of Professional Conduct fails as a matter of law. The State Defendants' Motion to Dismiss this claim is granted.

### 2.    Use of Taxpayer Money to Defendant Kasaris

Viola also requests a declaratory judgment that "Prosecutor Kasaris was not entitled to taxpayer funded legal services by the Ohio Attorney General's Office for his purportedly private actions." (Doc. No. 25 at p. 11.) This claim is in reference to an action filed by Viola against Defendant Kasaris in 2016 in the Southern District of Ohio (hereinafter "the Southern District of Ohio lawsuit"). *See Viola v. Kasaris*, Case No. 2:16-cv-1036 (S.D. Ohio). In that case, Viola alleged a claim under 42 U.S.C. § 1983 that Kasaris violated Viola's freedom of speech when he sent Viola a letter instructing him to remove any references to Kasaris and/or his family from Viola's www.freetonyviola.com website. *See Viola v. Kasaris*, 2017 WL 735588 at * 1 (S.D. Ohio Feb. 24, 2017) (Kemp, M.J.) In that letter, Kasaris advised Viola that his conduct could constitute a violation of Ohio Rev. Code § 2921.03(A) and that the failure to remove offending material from his website "may result in the initiation of a complaint against you for violation of the above statute which is a

felony of the third degree per occurrence, with the appropriate law enforcement agency." *Id.* Viola sought a "declaration that Mr. Kasaris's actions are unconstitutional, and an order enjoining Mr. Kasaris from further threatening to prosecute either Mr. Viola or others who have assisted with the website." *Id.* at *2.

State Defendants Buchanan and Carwile herein, represented Kasaris in that lawsuit. Among other things, Buchanan and Carwile argued (on Kasaris's behalf) that Viola's § 1983 claim failed as a matter of law because the letter in question was written by Kasaris in his capacity as a private citizen, and not as a government official, and therefore he was not a "state actor," a prerequisite for § 1983 liability. *Id.* at * 6. A Magistrate Judge issued a Report & Recommendation in which he agreed with Kasaris, finding as follows:

> [T]he Court concludes that when Mr. Kasaris wrote the letter in question, he was acting as a private citizen—or, more precisely stated, that Mr. Viola has not plausibly alleged the opposite scenario. Here, unlike the defendants in either *Teta v. Packard* or *Smith v. Avent*, Mr. Kasaris did not even file a criminal complaint; he merely suggested that he had grounds to do so if he wished. The complaint does not allege any facts supporting the inference that Mr. Kasaris was more able than the average citizen to follow through with filing a criminal complaint just because of his governmental positions. The nature of the act he performed, or threatened to perform, is, as *Johnson v. Miller* observed, quintessentially a private act. Absent some plausible and well-pleaded facts which would distinguish this case from the routine situation where one private citizen threatens to file a complaint against another, the complaint simply does not satisfy the pleading requirements for a First Amendment or § 1983 claim. Because that is so, Mr. Kasaris' motion to dismiss under Rule 12(b)(6) must be granted.

*Id.* at * 7. Viola subsequently filed Objections. On March 27, 2017, the District Court agreed with the Magistrate Judge and overruled Viola's Objections, as follows:

> Plaintiff raises multiple objections to the Magistrate Judge's Report and Recommendation, most of which are based on his argument that Defendant Kasaris is currently a prosecuting attorney with the Cuyahoga County Prosecutor's Office. However, as set forth in detail in the record, Mr. Kasaris left the prosecutor's office in August 2013 and he joined the Ohio Attorney General's Office. Despite Plaintiff

submitting a Linked In profile, this is not sufficient evidence and the Court agrees with the reasoning and conclusions of the Magistrate Judge in the Report and Recommendation that Defendant was not a prosecutor when he sent the letter in question to Plaintiff, it was not on any official stationary, nor signed as any official capacity. Rather, Defendant was merely acting as a private citizen concerned for his family.

The Magistrate Judge concluded, and the Court agrees, that Plaintiff's Complaint fails to state a claim under the First Amendment or § 1983 because he has not sufficiently alleged any state action. Therefore, for the reasons stated in the Report and Recommendation, this Court finds that Plaintiff's objections are without merit and are hereby OVERRULED.

*Viola v. Kasaris*, 2017 WL 1154190 at * 1 (S.D. Ohio) (Smith, J.)

In the instant case, Viola seeks a declaration that it was improper for Defendants Buchanan and Carwile to represent Kasaris, at taxpayer expense, in the Southern District of Ohio lawsuit in light of their argument in that case that Kasaris was acting in his private capacity as a citizen when he sent the letter in question to Viola. (Doc. No. 25 at p. 11.) For the following reasons, the Court finds this claim is barred by the Eleventh Amendment.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.

U.S. Const. amend. XI. Eleventh Amendment immunity extends to suits brought by citizens against their own states. *See, e.g., Ladd v. Marchbanks*, 971 F.3d 574, 578 (6th Cir. 2020). It also extends to suits against state agencies or departments, as well as to "suit[s] against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984) (citations omitted). As the United States Supreme Court has explained, a suit against a State, a state agency or its department, or a state official is in fact a suit against the State and is barred "regardless of the nature of the relief sought." *Id*. at 100-02 (citations omitted). *See also*

*McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) ("Eleventh Amendment immunity 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens.'") (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir.1993) (internal citations omitted)).

It is well-established, however, that there are three exceptions to Eleventh Amendment immunity: (1) congressional abrogation; (2) waiver by the State; and (3) "a suit against a state official seeking prospective injunctive relief to end a continuing violation of federal law." *See Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002) (citations omitted). *See also Kovacevich v. Kent State Univ.*, 224 F.3d 806, 817 (6th Cir.2000). Under the third exception (which is referred to as the *Ex Parte Young* exception), a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, regardless of whether compliance might have an ancillary effect on the state treasury. *See S&M Brands v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). The *Ex Parte Young* exception does not, however, extend to injunctive or declaratory relief compelling a state official to comply with *state* law. *See Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) ("In order to fall within the *Ex Parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law.") Nor does it apply to any retroactive relief. *See S&M Brand*, 527 F.3d at 507 (citing *Quern v. Jordan*, 440 U.S. 332, 338 (1979)).

For the following reasons, the Court finds that Viola's claim is barred by the Eleventh Amendment. As an initial matter, the Court concludes (as it did with regard to Viola's claims against the Federal Defendants) that Viola has sued the State Defendants in their official capacities only. The First Amended Complaint identifies the State Defendants by their official titles and the only allegations against these Defendants concern actions taken in their official capacities. Additionally,

40

the First Amended Complaint specifically references the State Defendants' alleged obligations "in their professional capacities" and does not, at any point, make any reference to the Defendants' alleged conduct or obligations in their individual capacities.  Finally, Viola's claim relates solely to the State Defendants' decision to represent Defendant Kasaris in federal litigation, a decision that cannot plausibly be construed to be against any of the State Defendants in their individual capacities.

Thus, the Court finds that Viola has sued the State Defendants in their official capacities and Eleventh Amendment immunity applies. *See, e.g., Smith v. DeWine*, 476 F.Supp.3d 635, 650 (S.D. Ohio 2020) (finding that Eleventh Amendment immunity extends to state officials sued in their official capacities).  *See also Heike v. Guevara*, 654 F.Supp.2d 658, 671 (E.D. Mich. 2009) (stating that "sovereign immunity bars suits in federal court against state officials acting in their official capacity for violations of state law, regardless of the relief sought.")

The Court further finds that Viola has not demonstrated that an exception to immunity applies. With regard to the first and second exceptions, Viola has neither argued nor demonstrated that the State of Ohio has consented to be sued or that Congress has abrogated immunity with regard to the particular claim at issue herein.  Nor has Viola argued or demonstrated that the *Ex Parte Young* exception applies.  And, indeed, he could not because, as discussed above, the *Ex Parte Young* exception applies only to claims for *prospective* injunctive or declaratory relief compelling a state official to comply with *federal* law.  Here, Viola seeks a declaration that the State Defendants' past decision to expend taxpayer resources to defendant Kasaris in a 2016 lawsuit violated state law.  This claim clearly does not fall within the *Ex Parte Young* exception.

To the contrary, Viola asks this Court to find that State Defendants Buchanan and Carwile, acting in their official capacities as Assistant Attorney Generals for the State of Ohio, violated state

41

law by representing Kasaris in the Southern District of Ohio litigation. Both the United States Supreme Court and the Sixth Circuit have held that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the [s]tate that is protected by the Eleventh Amendment." *Pennhurst State Sch. & Hosp*, 465 U.S. at 121. *See also In re Ohio Execution Protocol*, 709 Fed. Appx. 779, 781 (6th Cir. 2017) ("If the plaintiff sues a state official under state law in federal court for actions taken within the scope of his authority, sovereign immunity bars the lawsuit regardless of whether the action seeks monetary or injunctive relief."). Viola's claim is clearly barred by the Eleventh Amendment.

Accordingly, the State Defendants' Motion to Dismiss Viola' request for a declaratory judgment that Defendant Kasaris "was not entitled to taxpayer funded legal services by the Ohio Attorney's General Office" is granted.

### 3.      Constitutionality of Ohio Rev. Code § 2921.03(A)

Finally, Viola seeks a declaration that Ohio Revised Code § 2921.03(A)[11] is unconstitutional. (Doc. No. 25 at p. 13.) The State Defendants move to dismiss this claim on several grounds. (Doc. No. 34 at pp. 7-10.) First, the State Defendants argue that Viola's declaratory judgment claim fails because "[i]t is well-settled that the sole mechanism for seeking and obtaining relief under the First Amendment is by alleging a claim under 42 U.S.C. § 1983." (*Id.* at p. 7.) Defendants argue that Viola failed to bring his First Amendment claim under 42 U.S.C. § 1983 (or otherwise cite Section

---

[11] Ohio Revised Code § 2921.03(A) provides as follows: "No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty." The statute further states that "[w]hoever violates this section is guilty of intimidation, a felony of the third degree." Ohio Rev. Code § 2921.03(B).

1983 at any point in the First Amended Complaint) and, therefore, this claim fails as a matter of law. (*Id*. at pp. 7-8.)

Second, the State Defendants argue that, even if Viola had stated a claim under Section 1983, it would still fail as a matter of law because numerous Ohio Courts of Appeals have already found that Ohio Rev. Code § 2921.03(A) is neither unconstitutionally vague nor overbroad.  (*Id.* at p. 9) (citing *State v. Kinstle*, 985 N.E.2d 184, 191-193 (Ohio App. 3rd Dist. 2012); *State v. Baumgartner*, 2009 WL 344988 at * 5-7 (Ohio App. 8th Dist. Feb. 12, 2009); *State v Haskell*, 2004 WL 1433576 at * 5 (Ohio App. 3rd Dist. June 28, 2004); *State v. Roten*, 776 N.E.2d 551, 556-557 (Ohio App. 12th Dist. 2002).  The State Defendants maintain that this Court is bound by and must defer to these state court decisions as a matter of law.  (*Id.* at p. 9.)

Third, Defendants argue that Ohio Rev. Code § 2921.03(A) is not unconstitutionally vague because the statutory language "contains nothing other than common words that are understood by ordinary Ohioans."  (*Id.* at p. 10.)  Defendants further assert that "the statute is not overbroad as it specifically regulates speech-related conduct that is done with a specific intent to intimidate, influence, or hinder a public servant" and, therefore, "does not reach a 'substantial' amount of protected speech, if any."  (*Id*.)

Viola does not address any of the above arguments in his Consolidated Brief in Opposition. (Doc. No. 37.)  Nor does Viola otherwise, in any of his various motions and briefs, offer any responsive argument or legal authority opposing the State Defendants' arguments that (1) Section 1983 is the exclusive vehicle for raising his constitutional challenge to Ohio Rev. Code § 2921.03(A); (2) the First Amended Complaint fails to state a claim under Section 1983; (3) this Court must defer

to state appellate court decisions that have found Ohio Rev. Code § 2921.03(A) constitutional; or (4) that Section 2921.03(A) is neither unconstitutionally vague or overbroad.

Based upon Viola's complete failure to respond to any of these arguments, Viola is deemed to have abandoned and/or waived his claim for a declaratory judgment that Ohio Rev. Code § 2921.03(A) is unconstitutional. *See Weatherby v. Fed. Express*, 454 Fed. Appx. 480, 490 (6th Cir. 2012) (noting that "[t]hough this court provides some leeway to *pro se* litigants, Plaintiff must ... make some effort at argumentation or presentation of facts" and absent such effort, plaintiff's claims are deemed waived); *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived); *Scott v. State of Tennessee*, 1989 WL 72470 at *2 (6th Cir.1989) (noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion [to dismiss], then the district court may deem the plaintiff to have waived opposition to the motion."). *See also Selou v. Integrity Solution Services, Inc.*, 2016 WL 612756 at * 3 (E.D. Mich. Feb. 16, 2016) ("Plaintiff's failure to address any claim but her TCPA claim in response to LiveVox's motion to dismiss is cause for dismissing those claims."); *Ullmo v. Ohio Turnpike*, 126 F.Supp.3d 910, 919 (N.D. Ohio 2015) (finding that plaintiff abandoned claim where he failed to respond to defendant's motion to dismiss); *Dykema Excavators, Inc. v. Blue Cross of Blue Shield of Michigan*, 77 F.Supp.3d 646, 659 (E.D. Mich. 2015) ("[T]hese claims are subject to dismissal because the plaintiffs do not address or even mention them in their response to the motion to dismiss, and it appears that they therefore have abandoned them and now intend to make no effort to proceed upon them.")

Accordingly, the State Defendants' Motion to Dismiss this claim is granted.

E.      **Defendant O'Malley**

With regard to Defendant Cuyahoga County Prosecutor Michael O'Malley, the First

Amended Complaint alleges as follows:

> (4) Defendant Michael O'Malley campaigned for election as prosecutor as a reformer,
> and the Prosecutor's web site states that "Prosecutor Michael C. O'Malley took
> office on January 3, 2017, with a bold and comprehensive plan to restore the public's
> confidence by: 1) ensuring justice is sought fairly and impartially by instituting justice
> reforms; 2) building bridges in the community to keep our neighborhoods, families
> and children safe; and 3) providing leadership within the Prosecutor's Office and its
> justice system partners," http://prosecutor.cuyahogacounty.us/en-us/meet-the-
> prosecutor.aspx. Nevertheless, Prosecutor O'Malley has refused to investigate
> wrongdoing by his colleague, Mr. Kasaris, or look into the death of Ms. Pasela. Mr.
> O'Malley, the great reformer, has also enabled misconduct by failing to produce voice
> recordings made by Ms. Pasela and by allowing his office to be utilized as a location
> where federal prosecutors can stash exculpatory evidence.
>
> (5) Defendants O'Malley, Dave Yost, Steven Dettelbach and Justin Herdman all have
> or had obligations as supervisory officials who oversee prosecutors. These individuals
> have been repeatedly made aware of the wrongdoing by Bennett and Kasaris described
> herein and have [an] obligation to immediately report misconduct to the proper
> authorities, including the Department of Justice's Office of the Inspector General, yet
> have failed to follow these lawful obligations. ***

(Doc. No. 25 at p. 10.) Viola further alleges that, in his supervisory capacity over county prosecutors,

Defendant O'Malley had a responsibility to report the alleged misconduct of Defendants Bennett and

Kasaris, pursuant to (1) 28 C.F.R. §§ 45.11 and 45.12; (2) the "American Bar Association Committee

on Ethics and Professional Responsibility Formal Opinion 14-467 (2014);" and (3) "National

Prosecution Standard 1-1.6 'Duty to Report Misconduct,' National District Attorney's Association."

(*Id*. at p. 12.)

In addition, as an Exhibit to the First Amended Complaint, Viola attaches a letter dated

February 17, 2017 from Cuyahoga County Court of Common Pleas Judge Daniel Gaul to Viola.

(Doc. No. 25-4.) Therein, Judge Gaul expresses his "regret on [Viola's] continued incarceration" on

45

his federal conviction.  (*Id*.)  Judge Gaul then states as follows: "I am writing to inform you that there is a newly elected Cuyahoga County Prosecutor.  His name is Mike O'Malley.  His office may be willing to take a fresh look at Daniel Kasaris' misconduct in your case.  If Kasaris participated in your federal case, O'Malley's office may be able to intervene, or at least support a post-release remedy before Judge Nugent."  (*Id.*)

In his Motion to Dismiss, Defendant O'Malley argues that Viola does not state a plausible claim against him because he (i.e., O'Malley) was not, and could not, have been involved in either Viola's state or federal court prosecutions.  (Doc. No. 31 at pp. 7-8.)  Defendant O'Malley notes that he became the Cuyahoga County Prosecutor years after Viola's criminal cases were prosecuted and asserts that "[a]side from Judge Gaul's letter to Plaintiff more than five years after his federal conviction, Plaintiff fails to provide even an inkling as to why O'Malley's name has ever come up in the context of Plaintiff's criminal cases."  (*Id.* at p. 8.)  Defendant O'Malley further notes that Viola's state court prosecution did not lead to a conviction and argues that Viola has failed to set forth any allegations that O'Malley was in any way involved in the federal prosecution that led to conviction and incarceration.  (*Id*.)  Finally, Defendant O'Malley asserts that (1) the reporting requirements set forth in 28 C.F.R. §§ 45.11 and 45.12 do not apply to him; and (2) this Court lacks jurisdiction to determine whether he complied with the Ohio Rules of Professional Conduct.  (*Id*. at pp. 8-9.)

In his Consolidated Brief in Opposition, Viola argues only that "[c]ounsel for the Cuyahoga County Prosecutor, Mike O'Malley, pleads ignorance to emails in its own records system about the

improper relationship between Clover and Kasaris."[12]  (Doc. No. 37 at p. 3.)   Viola does not offer

any further response to Defendant O'Malley's Motion.  (*Id.*)

 For the following reasons, the Court finds that the First Amended Complaint fails to state a

plausible claim for relief against Defendant O'Malley.  As an initial matter, Viola fails to plead

sufficient factual matter to plausibly allege that Defendant O'Malley had any involvement in, or

knowledge regarding, either Viola's state or federal criminal cases, such that a duty for him to report

alleged misconduct would arise.  Viola himself acknowledges that Defendant O'Malley did not take

office as Cuyahoga County Prosecutor until January 2017, over five years after his federal conviction

and over four years after his acquittal in state court.  Further, while Viola alleges that O'Malley

"enabled misconduct" by "allowing his office to be utilized as a location where federal prosecutors

can stash exculpatory evidence," he fails to allege any plausible facts to support this allegation in

light of the fact that O'Malley was not the Cuyahoga County Prosecutor at the time of Viola's federal

or state prosecutions.  Nor does Viola plead any other facts indicating that Defendant O'Malley

otherwise had any knowledge or involvement in Viola's federal or state prosecutions that would have

triggered a duty for him to report misconduct relating thereto.  Even under the less stringent pleading

standards afforded *pro se* litigants, the First Amended Complaint herein is wholly insufficient.

 Moreover, even assuming *arguendo* that Viola had plead sufficient facts to suggest that

Defendant O'Malley had knowledge of alleged misconduct relating to his state and/or federal

prosecutions, the Court finds such claims would nonetheless be subject to dismissal for failure to state

a claim as a matter of law.   As discussed above, by their very terms, 28 C.F.R. §§ 45.11 and 45.12

---

[12] Viola then directs the Court's attention to a series of emails (attached as exhibits to the Consolidated Brief in Opposition) allegedly between Defendant Kasaris and Ms. Clover.  As discussed at length *supra*, the Court will not consider these emails in the context of resolving Defendant O'Malley's Motion to Dismiss.

apply only to Department of Justice employees.  As the Cuyahoga County Prosecutor, Defendant O'Malley was not subject to these regulations.  Moreover, there is no allegation in the First Amended Complaint that Defendant O'Malley has ever served, at any point in time, as an employee of the United States Department of Justice.  Thus, Viola's request for a declaratory judgment that Defendant O'Malley had a duty to report misconduct under 28 C.F.R, §§ 45.11 and 45.12 fails as a matter of law.

Further, Viola cites no authority (and the Court is not aware of any) that either ABA "Formal Opinion 14-467" or "National Prosecution Standard 1-1.6" create legally enforceable duties on Defendant O'Malley under the circumstances presented herein.  Therefore, Viola's request for a declaratory judgment that Defendant O'Malley had a duty to report misconduct under either of these sources likewise fails as a matter of law.

Finally, to the extent Viola seeks a declaratory judgment regarding Defendant O'Malley's alleged violation of his duties under the Ohio Rules of Professional Conduct, this claim is subject to dismissal as a matter of law because, as noted above, "jurisdiction to rule on alleged disciplinary violations lies exclusively with the Ohio Supreme Court."  *See, e.g., Rodojev*, 2010 WL 5811886 at * 6; *Fred Siegel Co.*, 85 Ohio St.3d at 178; *Fitzwater*, 2006 WL 3833972 at *3.  *See also Kafele*, 108 Fed. Appx. at 309 (finding that the ORPC does not create a private cause of action); *Fred Siegel Co., L.P.A.*, 85 Ohio St.3d at 178 (same); *Lloyd*, 2020 WL 5366109 at * 3 (same).

Accordingly, and for all the reasons set forth above, Defendant O'Malley's Motion to Dismiss (Doc. No. 31) is granted.

### F.  Defendant Sidoti

With regard to Defendant Marcus Sidoti, the First Amended Complaint alleges as follows:

> Defendant Marcus Sidoti contacted the undersigned in federal prison on an unsolicited basis stating that his client Lucas Fairfield saw Prosecutor Kasaris at a Cleveland Indians game with Kathryn Clover.  Mr. Sidoti also stated, on a recorded phone call, that Prosecutor Kasaris and Ms. Clover frequently left the prosecutor's office to head to local hotels for sexual trysts, then returned to the office to continue working on cases together, indicting more innocent people, but Defendant Sidoti never reported this information to the Ohio Supreme Court.

(Doc. No. 25 at p. 10.)  *See also* Doc. No. 25 at p. 4.  Viola alleges generally that "defendants" are required to report misconduct under 28 C.F.R. §§ 45.11 and 45.12, ABA "Formal Opinion 14-467" and "National Prosecution Standard 1-1.6." (*Id*. at p. 12.)  He further alleges that "[d]efense attorney[] Sidoti . . . [was] also under an obligation to report the use of perjured testimony and information concerning the improper personal relationship between Prosecutor Kasaris and Kathryn Clover to the Ohio Supreme Court." (*Id*.)

In his Motion to Dismiss, Defendant Sidoti states that he "was never directly or collaterally involved in the representation of the Plaintiff, any co-conspirators, counsel for either prosecution or anyone involved or identified in the Plaintiff's federal or state cases." (Doc. No. 52 at p. 2.)  He further claims that "Lucas Fairfield, as addressed on page 10 ¶ 3 of the amended complaint, has never been a client of the undersigned or anyone in his office." (*Id*.)  With regard to any alleged obligation to report misconduct, Defendant Sidoti argues that he "was not involved in any way in any of the criminal proceedings of the Plaintiff, and therefore has no knowledge of any testimony of either trial against Plaintiff by anyone." (*Id*.)

In response, Viola asserts that state court records show that Defendant Sidoti represented Lucas Fairfield's brother, Matthew Fairfield. (Doc. No. 54.)  Viola alleges that Matthew Fairfield was married to Kathryn Clover and testified at Viola's trial. (*Id*.)  Viola then states that: "Matt Fairfield was granted judicial release from state prison after Mr. Sidoti informed Judge Nancy Russo

about the affair between Kasaris and Clover. Finally, Mr. Sidoti contacted [Viola] on an unsolicited basis in prison – and a recording of the call can be made available on request—where Sidoti claimed Prosecutor Kasaris and government witness Kathryn Clover left the prosecutor's office to engage in sexual relations." (*Id.*)

Even assuming *arguendo* that Viola has plead sufficient facts to suggest that Defendant Sidoti had personal knowledge of alleged misconduct relating to his state and/or federal prosecutions, the Court finds such claims are subject to dismissal for failure to state a claim as a matter of law. To the extent Viola claims that Defendant Sidoti had a duty to report misconduct under 28 C.F.R. §§ 45.11 and 45.12, any such claim fails because Viola has not plausibly alleged that Defendant Sidoti is (or ever was) an employee of the Department of Justice. Moreover, to the extent Viola seeks a declaratory judgment regarding Defendant Sidoti's alleged violation of his duties under the Ohio Rules of Professional Conduct, this claim is subject to dismissal as a matter of law because, as noted *supra*, "jurisdiction to rule on alleged disciplinary violations lies exclusively with the Ohio Supreme Court." *See, e.g., Rodojev*, 2010 WL 5811886 at * 6. *See also Fred Siegel Co.*, 85 Ohio St.3d at 178; *Fitzwater*, 2006 WL 3833972 at *3. *See also Kafele*, 108 Fed. Appx. at 309 (finding that the ORPC does not create a private cause of action); *Fred Siegel Co., L.P.A.*, 85 Ohio St.3d at 178 (same); *Lloyd*, 2020 WL 5366109 at * 3 (same).

Accordingly, and for all the reasons set forth above, Defendant Sidoti's Motion to Dismiss (Doc. No. 52) is granted.

### G. Defendant Schlachet

50

With regard to Defendant Schlachet, the First Amended Complaint alleges as follows. Defendant Schlachet is a defense attorney who, at one time, represented government witness Kathryn Clover.  Viola alleges that:

> [D]uring the federal trial, Clover informed her attorney, Jaye Schlachet that she committed perjury by falsely testifying that the Plaintiff conspired with her to commit mortgage fraud - testimony she recanted at the second trial.  But when Mr. Schlachet contacted Mark Bennett and asked him to recall Clover to the stand to correct her false testimony, Bennett refused because doing so "jeopardized the outcome of the case ... [and] it served the best interests of justice to allow her testimony to remain unchanged," *USA v. Clover*, Docket # 29-1, page 8.  Attorney Schlachet accepted Bennett's decision and failed to report the knowing use of perjured testimony to obtain a conviction to the Ohio Supreme Court Disciplinary Counsel.  Even worse, prosecutors Bennett and Kasaris CONTINUED to use Clover as a government witness in dozens of criminal and grand jury proceedings, *USA v. Clover*, Docket# 29-1, pages 43-44.

(Doc. No. 25 at p. 4.)  Viola further asserts that Defendant Schlachet was required to report the alleged misconduct relating to Ms. Clover's allegedly perjured testimony, pursuant to Ohio Rule of Professional Conduct 8.3(a) and the "Supreme Court of Ohio's Board of Commissioners on Grievances & Discipline Advisory Opinion 2016-2."  (*Id*. at p. 12.)

In his Motion to Dismiss, Defendant Schlachet argues that there is no legal cause of action for failure to report misconduct under the Ohio Rules of Professional Conduct, and that this Court lacks jurisdiction to hear such claims.  (Doc. Nos. 17, 22.)  He further asserts that he "was not even involved as defense counsel in the underlying matter complained of by Plaintiff."  (Doc. No. 22 at p. 1.)

In response, Viola argues that Defendant "Schlachet has simultaneously represented Dan Kasaris and [] Kathryn Clover, and is part of a cover up of Dan Kasaris's romantic relationship with Kathryn Clover."  (Doc. No. 37 at p. 2.)  Specifically, Viola argues that (1) Defendant Kasaris hired Defendant Schlachet to prepare a Separation Agreement between Defendant Kasaris and his wife;

and (2) also represented "Kasaris' paramour Kathryn Clover" in Clover's divorce proceedings and Clover's criminal case in *United States v. Clover*, Case No. 10-cr-75 (N.D. Ohio) (Nugent, J.). (*Id.*) Viola further asserts that Defendant Schlachet attempted to cover up Ms. Clover's alleged perjury in federal court. (*Id.*)

The Court finds that Viola's claims against Defendant Schlachet are subject to dismissal for failure to state a claim as a matter of law. As discussed above, "jurisdiction to rule on alleged disciplinary violations lies exclusively with the Ohio Supreme Court." *See, e.g., Rodojev*, 2010 WL 5811886 at * 6. *See also Fred Siegel Co.*, 85 Ohio St.3d at 178; *Fitzwater*, 2006 WL 3833972 at *3. Moreover, both the Sixth Circuit and the Ohio Supreme Court have held that the Ohio Rules of Professional Conduct does not create a private cause of action. *See, e.g., Kafele*, 108 Fed. Appx. at 309; *Fred Siegel Co., L.P.A.*, 85 Ohio St.3d at 178. *See also Lloyd,* 2020 WL 5366109 at * 3. Therefore, the Court finds that Viola has failed to state a claim for a declaratory judgment that Defendant Schlachet violated the Ohio Rules of Professional Conduct by failing to report alleged misconduct relating to Ms. Clover.

Accordingly, Defendant Schlachet's Motion to Dismiss (Doc. No. 22) is granted.

## V.    Motion to Refer for Criminal Investigation (Doc. No. 40)

On September 30, 2020, Viola filed a Motion to Refer Defendants Bennett and Kasaris for Criminal Investigation based on "recently obtained emails between Bennett, Kasaris, and government witness Kathryn Clover," which are attached to the motion as Exhibit A. (Doc. No. 40.) According to Viola, these emails confirm that Defendants Bennett and Kasaris "committed a fraud on the court." (*Id.*) Viola further argues the emails show that Ms. Clover "sat in on meetings with other government witnesses, conducted surveillance of Viola's residence, had access to all Task Force evidence,

revealed grand jury information, and committed perjury in federal court." (*Id.*) He asserts that "these emails constitute a crime and a conspiracy to deny the undersigned the constitutional right to a fair trial." (*Id.*) Viola asks the Court to refer Defendants Bennett and Kasaris "for prosecution." (*Id.*)

Both the Federal Defendants and Defendant Kasaris oppose Viola's Motion. (Doc. Nos. 45, 51.) The Federal Defendants argue that Viola's motion should be denied because, as a matter of law, he has no right to compel a criminal investigation or prosecution against Defendant Bennett. (Doc. No. 51.) The Federal Defendants further note that Defendant Bennett's name only appears as a copied recipient in a single email exchange occurring in February 2012, "long after Viola was tried, convicted, and sentenced" in federal court. (*Id.*)

Defendant Kasaris argues that Viola's Motion should be denied as frivolous. (Doc. No. 45 at p. 5.) He asserts that "though this Court has already found that Clover's 'involvement' in the Plaintiff's prosecution was not improper,[13] the Plaintiff continues to use this Court's docket as a forum through which he can file pleadings and lob baseless allegations to the contrary." (*Id.*)

In reply, Viola argues that any previous rulings by other courts regarding Ms. Clover's testimony are not binding in this litigation and that "the discovery of new and different material

---

[13] Defendant Kasaris references Judge Nugent's November 2015 decision, in which he denied Viola's Motion to Vacate his federal conviction under 28 U.S.C. § 2255. *See United States v. Viola*, 2015 WL 7259783 (N.D. Ohio Nov. 17, 2015). Therein, Judge Nugent specifically addressed and rejected Viola's claims of prosecutorial misconduct based on the alleged use of the perjured testimony of Ms. Clover during Viola's federal trial. *Id.* at * 8-9. To the contrary, Judge Nugent found as follows: "Finally, Mr. Viola has presented no evidence whatsoever that Mr. Bennett or anyone else on the prosecution team knew that Ms. Clover's testimony on these issues was false. In fact, as Mr. Viola points out, Mr. Bennett, himself, challenged Ms. Clover's credibility in front of the jury, even though she was the prosecution's witness, when he had reason to believe that she was not telling the truth during her testimony. This is not evidence of prosecutorial misconduct, but of prosecutorial integrity." *Id.* at * 9. On November 23, 2016, the Sixth Circuit denied Viola's application for a certificate of appealability from Judge Nugent's decision. *See Viola v. United States*, Case No. 16-3023 (6th Cir. Nov. 23, 2016).

evidence that was not presented in prior actions warrants consideration by this Court." (Doc. No. 53 at p. 2.)  Viola subsequently filed additional documents in support of his Motion.  (Doc. No. 55.)

Viola's Motion to Refer Defendants Bennett and Kasaris for criminal investigation and prosecution is denied.  This Court does not have authority to launch criminal investigations, file criminal charges, or to direct the prosecutor to file charges.  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system ... the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion.").  *See also Garner v. Department of Defense*, 2019 WL 9673770 at * 3 (S.D. Ohio May 30, 2019).  Moreover, as the Sixth Circuit recently explained, a plaintiff's "request for criminal prosecution of the defendant attorneys fails because a private citizen cannot compel a criminal investigation or prosecution against another."  *Bell v. Biven*, 2020 WL 3256832 at * 2 (6th Cir. Jan. 14, 2020).  *See also Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Mitchell v. McNeil,* 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation.").[14]

Accordingly, Viola's Motion to Refer for Criminal Investigation (Doc. No. 40) is denied.

**VI.     Motions to Declare Vexatious and to Impose Pre-Filing Restrictions (Doc. Nos. 30, 45)**

---

[14] The Court also notes that this is not the first time that Viola has asked the Court to refer Defendant Bennett for a criminal investigation and/or prosecution.  In July 2016, Viola filed a "Motion to Refer Prosecutorial Misconduct to the Office of Professional Responsibility" in an action entitled *U.S. Bank National Association v. Viola*, Case No. 16cv969 (N.D. Ohio) (Gwin, J.) (Doc. No. 12), which he asked the Court to refer Bennett for  criminal investigation and/or prosecution.  Judge Gwin denied the motion.  *Id.* at Doc. No. 18.

Finally, the Federal Defendants ask this Court to declare Viola a vexatious litigator and enjoin him from filing additional civil actions absent leave of Court.  (Doc. No. 30-1 at pp. 12-13.) Defendant Kasaris separately requests that the Court impose pre-filing restrictions.  (Doc. No. 45 at pp. 3-5.)  Specifically, Defendant Kasaris asks that "this Court bar Plaintiff from filing anything further in this action absent leave to court, obtained telephonically."[15]  (*Id.* at p. 5.)

In support of their motions, the Federal Defendants and Defendant Kasaris note that District Judge Nugent has already declared Viola a vexatious litigator in his criminal case due to his pattern of filing motions that are "repetitive and baseless" and "calculated to abuse the judicial process and to harass the prosecution."  *See United States v. Viola*, Case No. 1:08cr506 (N.D. Ohio) (Nugent, J.) (Doc. No. 541 at p. 6.)  In that case, Viola was "permanently enjoined from filing any further motions or other documents pertaining to his conviction and sentence in this criminal action unless and until he has received permission from the Sixth Circuit to file a second or successive petition under 28 U.S.C. § 2255."  (*Id.*)  In addition, the Federal Defendants and Defendant Kasaris note that Judge Nugent has already determined that Viola's prosecutorial misconduct claims are meritless.[16]

These Defendants also note that Viola has filed "numerous civil suits attacking his conviction and sentence, nearly all of which have been dismissed." (Doc. No. 30-1 at p. 12.)  These civil actions include: (1) Viola's petition under 28 U.S.C. § 2255, which was filed as a civil action but then

---

[15] Although he did not file a separate motion to this effect, Defendant Schlachet also requests that this Court declare Viola a vexatious litigator.  (Doc. No. 22 at p. 1) (incorporating "as if fully rewritten" Doc. No. 17 at p. 4.)

[16] *See, e.g., United States v. Viola*, Case No. 1:08cr506 (N.D. Ohio) (Nugent, J.) (Doc. No. 541 at p. 6.) ("Mr. Viola has repeatedly raised the issue of Ms. Clover's alleged relationship with the prosecutor in his state case [and] of an alleged existence of a conflict of interest. . . The Court has already addressed each of these issues in prior opinions, finding that none of the allegations had any effect on the Constitutionality of Mr Viola's federal trial.  They also fail to provide a basis for imposing sanctions on the federal prosecutor."); *United States v. Viola*, 2015 WL 7259783 at * 8-9  (N.D. Ohio Nov. 17, 2015) (Nugent, J.) (specifically addressing and rejecting Viola's claims of prosecutorial misconduct based on the alleged use of the perjured testimony of Ms. Clover during Viola's federal trial.)

consolidated with his criminal case, in *Viola v. United States*, Case No. 1:15cv542 (N.D. Ohio); (2) *Viola v. Kasaris*, Case No. 2:16cv1036 (S.D. Ohio) (civil rights action under 42 U.S.C. § 1983 against Kasaris); (3) *Viola v. Bennett*, Case No. 1:17cv456 (N.D Ohio) (civil rights action against Defendant Bennett); and (4) *Viola v. Bair*, Case No. 1:17cv827 (N.D. Ohio) (civil rights action challenging restitution imposed in criminal case).

Viola argues that this Court should not declare him to be a vexatious litigator in light of the fact that (1) he was acquitted after his state criminal trial; and (2) "none of the defendants dispute the authenticity of any of the documents attached to the complaint, nor do they contest the long list of prosecutorial misconduct." (Doc. No. 37 at p. 6.) Viola asserts that "litigiousness alone is insufficient to support a finding of vexatiousness" and insists that his claims have merit and are properly before this Court. (*Id.*)

Federal courts have recognized their own inherent power and constitutional obligation to protect themselves from conduct that impedes their ability to perform their Article III functions and to prevent litigants from encroaching on judicial resources that are legitimately needed by others. *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir.1986). To that end, the Sixth Circuit Court of Appeals has approved various prefiling restrictions imposed on harassing and vexatious litigators as an inherent constitutional and statutory power of the federal courts. *See, e.g., Filipas v. Lemons*, 835 F.2d 1145 (6th Cir.1987)(noting courts have authority to impose restrictions on harassing and vexatious litigators); *Feathers v. Chevron U.S.A.*, 141 F.3d 264, 269 (6th Cir.1998)(affirming district court's ability to impose prefiling restrictions in matters with a history of vexatious litigation); *Wrenn v. Vanderbilt Univ. Hosp.*, 1995 WL 111480 at * 3 (6th Cir. Mar. 15, 1995) ("This court has the authority to enjoin harassing litigation under its inherent authority and the All Writs Act, 28 U.S.C.

56

§ 1651(a) ...")  In most cases, "the preferred approach is to require an abusive litigant to obtain leave of court before filing suit regarding the operative facts that have been the basis for his or her litigiousness."  *Hyland v. Stevens*, 37 Fed. Appx. 770, 771 (6th Cir. 2002) (citing *Filipas*, 835 F.2d at 1146 and *Siller v. Haas*, 21 Fed. Appx. 270, 272 (6th Cir.2001)).  *See also Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996); *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 940 (6th Cir. 2002).

Here, the Court notes that this is the fourth civil rights lawsuit filed by Viola in United States District Court against Defendants Bennett and/or Kasaris stemming from his underlying state and federal criminal cases.  These four civil lawsuits (coupled with the numerous post-judgment motions and petitions filed in his federal criminal case) have placed Viola in a precarious situation.  Upon review of Viola's various filings, this Court would be well within its power, should it choose, to declare him to be a harassing and vexatious litigator and subsequently impose prefiling restrictions. However, neither the Federal Defendants nor Defendant Kasaris have directed this Court's attention to any warnings in Viola's other previously filed civil lawsuits that, given his litigation history, he could be declared to be a harassing and vexatious litigator for purposes of his civil claims.  *See Johnson v. University Housing*, 2007 WL 4303728 at * 13 (S.D. Ohio Dec. 10, 2007) (denying motion to declare vexatious litigator where *pro se* plaintiff had not previously been warned of the possibility of prefiling restrictions).  *See also Sultaana v. Jerman*, 2020 WL 5997087 at * 16 (N.D. Ohio April 2, 2020) (in granting motion to declare vexatious, noting that the plaintiff had previously been given a warning that pre-filing restrictions could imposed);

While the Court sympathizes with the Defendants' concerns, the Court declines to declare Viola a vexatious litigator and impose pre-filing restrictions at this time.  However, the Court hereby warns Viola that the filing of a frivolous civil lawsuit relating in any way to the matters raised in the

First Amended Complaint herein, could result in him being declared a harassing and vexatious litigator and the imposition of prefiling restrictions in this Court.  These restrictions could include, but are not limited to, (1) requiring Viola to file a bond to cover the opposing party's attorney's fees, *see, e.g., Stewart v. Fleet Financial*, 2000 WL 1176881 at * 2 (6th Cir. Aug. 10, 2000) (requiring harassing and vexatious litigator to file $25,000 bond prior to filing suit is not an abuse of discretion); (2) limiting the nature or subject of lawsuits that may be filed, *see, e.g., Feathers*, 141 F.3d at 269 ("[W]e see nothing wrong, in circumstances such as these, with an order that restrains not only an individual litigant from repeatedly filing an identical complaint, but that places limits on a reasonably defined category of litigation because of a recognized pattern of repetitive, frivolous, or vexatious cases within that category"); or (3) mandating that Viola first seek leave of court prior to filing a lawsuit and/or prior to filing motions in a given case, *see, e.g., Marbly v. Wheatley*, 87 Fed. Appx. 535 (6th Cir. Feb. 4, 2004).

Accordingly, the Motions of the Federal Defendants and Defendant Kasaris to declare Viola a vexatious litigator and/or impose prefiling restrictions (Doc. Nos. 30, 45) are denied without prejudice at this time.

## VII.    Conclusion

For all of the foregoing reasons, Plaintiff's Motions for Appointment of Counsel (Doc. No. 23), to take Judicial Notice (Doc. No. 32), and to Refer for Criminal Prosecution (Doc. No. 40) are DENIED.  The Federal Defendants' Motion to Dismiss and to Declare Vexatious (Doc. No. 30) is GRANTED IN PART and DENIED IN PART.  The Federal Defendants' Motion is GRANTED to the extent it seeks dismissal of Plaintiff's claims but DENIED to the extent it asks that the Court to declare Viola a vexatious litigator.

The State Defendants' Motion to Dismiss (Doc. No. 34) is GRANTED.  The Motions to Dismiss filed respectively by Defendants O'Malley, Sidoti, and Schlachet (Doc. Nos. 31, 52, 22) are GRANTED.  And, finally, Defendant Kasaris's Motion to Impose Pre-Filing Restrictions (Doc. No. 45) is DENIED.

**IT IS SO ORDERED.**


       *s/Pamela A. Barker*

PAMELA A. BARKER

Date:  February 11, 2021               U. S. DISTRICT JUDGE